[No. S033749. Dec. 1, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
WAYMOND DARNELL HALL, Defendant and Appellant.

**COUNSEL**

George Bond, under appointment by the Supreme Court, Howard J. Specter and Jim Fahey, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Wiliamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger, Shirley A. Nelson, Suzanne M. Ambrose and Stan Cross, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GEORGE, J.**—Under the Uniform Determinate Sentencing Act of 1976 (Pen. Code, § 1170[1] et seq.), the Legislature has established an elaborate sentencing scheme that prescribes terms of imprisonment for enumerated offenses and sets forth sentencing "enhancements," which, under specified circumstances, increase the length of a defendant's incarceration. Certain enhancements specify a single term of imprisonment to be imposed upon all defendants subject to the enhancement, whereas, for other enhancements, the trial court is authorized to impose any one of three possible terms, designated as the lower, middle, or upper term. (§ 1170, subd. (b).)

The issue we address in the present case concerns the validity of California Rules of Court, rule 428(b) (adopted by the Judicial Council in 1991), which limits the authority of a trial court in imposing additional punishment for such an enhancement by providing that "[t]he upper term may be

---

[1]The Uniform Determinate Sentencing Act of 1976 often has been referred to as the "Determinate Sentencing Law," or "DSL," but hereinafter is referred to as the "DSA." Subsequent statutory references are to the Penal Code, unless otherwise indicated. References to rules are to the California Rules of Court.

imposed for an enhancement *only when there are circumstances in aggravation that relate directly to the fact giving rise to the enhancement.*" (Italics added.) Relying upon rule 428(b), the Court of Appeal in the present case held that the trial court erred in basing its imposition of the upper term for a firearm-use enhancement upon the circumstance that defendant was on parole when he committed the offenses at issue. The Court of Appeal, further holding that this error was prejudicial, concluded that the punishment imposed for the firearm-use enhancement should be reduced to the middle term. In reaching its decision, the Court of Appeal rejected the People's contention that rule 428(b) conflicts with controlling statutory authority. We granted review to consider the validity of rule 428(b) and its application to the circumstances presented by this case.

As we shall explain, we hold that, insofar as rule 428(b) purports to afford a sentencing court less discretion in determining whether to impose an upper term for a *sentencing enhancement* than such a court traditionally has been permitted to exercise in deciding whether to impose an upper term for a *substantive offense*, the rule is inconsistent with the statutory scheme it was intended to implement and, for that reason, is invalid. Because a sentencing court long has been permitted to consider the circumstance that the defendant was on parole when he or she committed the offense, as an aggravating factor justifying imposition of the upper-term sentence for a substantive offense, we believe the Legislature similarly intended to permit a sentencing court to rely upon that same consideration—i.e., the defendant's parole status—in determining that the upper term should be imposed for an applicable sentence enhancement. Accordingly, we conclude that the Court of Appeal erred in upholding the validity of the portion of rule 428(b) challenged in the present case, and in ordering that the upper term for the firearm-use enhancement imposed upon defendant by the trial court be reduced to the middle term.

## I.

On November 11, 1990, at approximately 3 p.m., defendant and a codefendant, Timothy Taray Daniels, entered the Payless Shoe Source in Bakersfield, posing as customers. While a store employee waited upon Daniels, he grabbed her by the neck, pointed a gun at her side, and pushed her into the back portion of the store. Defendant pointed a gun at the store manager and ordered him and two customers to the rear, where Daniels ordered the customers, at gunpoint, to lie facedown on the floor and to place their purses by their heads, then tied the customers' hands behind their backs and bound their ankles with duct tape. Daniels ordered the store manager to accompany defendant to the store safe and cash register. After complying, the manager was bound with duct tape, and defendant and Daniels fled.

Following defendant's commission of a robbery eight days later at a Bakersfield dry cleaning enterprise, One Hour Martinizing, defendant was arrested and charged by information with three counts of second degree robbery (§§ 664/212.5) and two counts of false imprisonment (§ 236). As to each of these offenses, it was alleged that defendant personally used a firearm within the meaning of section 12022.5, subdivision (a). The information also charged defendant with two counts of possession of a firearm by a convicted felon (§ 12021, subd. (a)), with having suffered four prior serious felony convictions within the meaning of section 667, subdivision (a), and with having served three separate prior prison terms within the meaning of section 667.5, subdivision (b). Trial of the prior-felony-conviction and prior-prison-term enhancement allegations was bifurcated from trial on the various counts.

Defendant pleaded not guilty on all counts and denied the enhancement allegations. At the close of the prosecution's case-in-chief, the court granted defendant's motion for acquittal (§ 1118.1) on one of the robbery charges. Thereafter, a jury, rejecting defendant's alibi defense, found defendant guilty on all remaining counts and found true the remaining allegations. Subsequently, the prior-felony-conviction and prior-prison-term allegations were separately tried and found true by the jury.

Defendant was sentenced to a prison term of thirty-four years and four months for the robberies and the other offenses committed at the Payless Shoe Source and One Hour Martinizing establishments, and to a consecutive term of five years and four months for other offenses (not relevant here) committed in Los Angeles County, for a total prison term of thirty-nine years and eight months.[2] Defendant's total prison term included a five-year enhancement for personal use of a firearm, the upper term prescribed by former section 12022.5, subdivision (a),[3] the trial court selecting the upper term based upon the "circumstance in aggravation . . . [that] the defendant

---

[2]The trial court calculated defendant's total sentence of thirty-nine years and eight months as follows: (1) the upper term of five years for the Payless Shoe Source robbery (§ 212.5, subd. (b)); (2) an enhancement of five years for use of a firearm in the commission of the Payless Shoe Source robbery (former § 12022.5, subd. (a)); (3) an additional enhancement of twenty years for the four prior felony convictions (§ 667, subd. (a)); (4) four years and four months for the remaining offenses committed at the Payless Shoe Source and One Hour Martinizing establishments, and related enhancements; and (5) five years and four months for the offenses committed in Los Angeles County. Pursuant to the proscription against multiple punishment set forth in section 654, the sentencing court stayed additional punishment imposed for the prior-prison-term enhancements alleged under section 667.5, subdivision (b). (See *People* v. *Jones* (1993) 5 Cal.4th 1142 [22 Cal.Rptr.2d 753, 857 P.2d 1163].)

[3]Former section 12022.5, subdivision (a), provided, in pertinent part and subject to certain exceptions inapplicable here, that "any person who personally uses a firearm in the commission or attempted commission of a felony shall, upon conviction of that felony or attempted

was on parole" when the Payless Shoe Source robbery was committed (the court stating that it had not relied upon defendant's parole status as a factor in imposing the upper-term sentence on the Payless robbery count).

In the Court of Appeal, defendant challenged the judgment on numerous grounds, among them that the sentencing court erred in imposing the five-year upper term for the firearm-use enhancement on the basis of defendant's parole status, because rule 428(b) provides, in pertinent part, that the upper term provided in a sentencing enhancement provision may be imposed for an enhancement only when there are "circumstances in aggravation that relate directly to the fact giving rise to the enhancement." Defendant contended that his having been on parole when he committed the robbery is not a fact relating directly to his use of a firearm and therefore cannot properly be the basis for imposition of the upper term under rule 428(b). In response, the People contended that rule 428(b) is inconsistent with the Legislature's intent in enacting the DSA and therefore is invalid.

The Court of Appeal, upholding the validity of rule 428(b), rejected the People's position and ordered the trial court to modify defendant's sentence by imposing the middle term for the firearm-use enhancement, thus reducing defendant's prison sentence by one year but otherwise affirming the judgment.

We granted the People's ensuing petition for review, which challenged the Court of Appeal's judgment insofar as it upheld the validity of rule 428(b) and reduced the term imposed upon defendant for the firearm-use enhancement.

## II.

The People challenge the decision rendered by the Court of Appeal reversing the trial court's imposition of the upper term for defendant's use of a firearm. The People contend that rule 428(b) represents an invalid exercise of the Judicial Council's authority to promulgate sentencing rules, because the rule improperly limits the discretion of the trial court, in imposing the upper term on an enhancement, to circumstances in aggravation "that relate directly to the fact giving rise to the enhancement."

---

felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison for three, four, or five years . . . ." As part of a recent amendment to section 12022.5, subdivision (a)—having no bearing upon the disposition of the present case—the Legislature increased the upper term on the enhancement from five to ten years. (Stats. 1994, First Ex. Sess. 1994, ch. 31, § 3.)

## A.

Rule 428(b), one of the sentencing rules for the superior courts, was promulgated by the Judicial Council "pursuant to Penal Code section 1170.3, and pursuant to the authority granted to the Judicial Council by the Constitution, article VI, section 6, to adopt rules for court administration, practice and procedure." (Rule 401.) In pertinent part, section 1170.3 provides: "The Judicial Council shall seek to promote uniformity in sentencing under Section 1170, by: [¶] (a) The adoption of rules providing criteria for the consideration of the trial judge at the time of sentencing regarding the court's decision to: [¶] (1) Grant or deny probation. (2) *Impose the lower or upper prison term.* (3) Impose concurrent or consecutive sentences. (4) Determine whether or not to impose an enhancement where the determination is permitted by law. . . ." (Italics added.)

The People do not challenge the Judicial Council's authority under section 1170.3 to adopt rules regarding the criteria that a trial court should consider at the time of sentencing in determining whether to impose an upper or lower term, nor do the People contest that the Judicial Council's authority under this statute extends to the adoption of rules that apply to imposition of upper or lower terms of imprisonment for sentence enhancements as well as for substantive offenses. Rather, the People contend the Judicial Council exceeded its authority under section 1170.3 when it provided, in rule 428(b), that "[t]he upper term may be imposed for an enhancement *only when there are circumstances in aggravation that relate directly to the fact giving rise to the enhancement.*" (Italics added.) The People assert that, because a trial court, in determining whether to impose an upper term *for a substantive offense*, is authorized to consider circumstances in aggravation that relate to the background of the offender, as well as those that relate to the circumstances of the offense (rule 421), the Judicial Council lacked authority to promulgate a rule that imposed a greater restriction on the trial court's authority to impose the upper term in the context of a *sentence enhancement.* According to the People, such a restriction conflicts with the legislative intent underlying the DSA—that trial courts consider the totality of the circumstances in each case in which a three-tiered scheme of sentencing is specified, taking into consideration factors related to both the offense *and* the offender. (See *People* v. *Cheatham* (1979) 23 Cal.3d 829, 836 [153 Cal.Rptr. 585, 591 P.2d 1237].)

In evaluating the People's position, it is instructive to begin with an overview of the DSA and the Judicial Council's role in the statutory scheme. In *People* v. *Wright* (1982) 30 Cal.3d 705 [180 Cal.Rptr. 196, 639 P.2d 267], we summarized certain evolutionary changes in California's sentencing

scheme as follows: "Prior to 1977, a system of indeterminate sentences was followed in California. In 1976, the Legislature enacted the Determinate Sentencing Act (Stats. 1976, ch. 1139) adopting a system of specification of three possible terms of imprisonment for each offense (Pen. Code, § 1170, subd. (a)(2)). In determining which term to impose, 'the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.' (Pen. Code, § 1170, subd. (b).) The Legislature directed the Judicial Council to 'promote uniformity' in sentencing by adoption of rules providing criteria for trial judge consideration regarding imposition of lower or upper prison terms. (Pen. Code, § 1170.3, subd. (a).) [Fn. omitted.] The statutory authorization permits the council to adopt rules establishing circumstances in aggravation and mitigation relating to the crime and to the defendant. (*People* v. *Harvey* (1979) 25 Cal.3d 754, 758 [159 Cal.Rptr. 696, 602 P.2d 396]; *People* v. *Cheatham* (1979) 23 Cal.3d 829, 833 et seq. [153 Cal.Rptr. 585, 591 P.2d 1237].)

"The Judicial Council adopted Sentencing Rules for the Superior Courts. (Cal. Rules of Court, rules 401-453.) The trial court must consider the criteria enumerated in the rules and may also consider additional criteria reasonably related to the decision and stated on the record. (*Id.*[,] rules 408, 409.) Selection of the upper term is justified only if circumstances in aggravation are established by a preponderance of evidence and outweigh circumstances in mitigation. Similarly, selection of the lower term is justified only if circumstances in mitigation are established by a preponderance of the evidence and outweigh circumstances in aggravation." (*People* v. *Wright, supra,* 30 Cal.3d 705, 709-710.)

Thus, the DSA replaced indeterminate sentences for substantive offenses with a range of three possible sentences (lower, middle, and upper terms) and, from the outset, delegated to the Judicial Council the authority to adopt criteria to be used by trial courts in determining which term to impose. Shortly thereafter, the Judicial Council adopted guidelines, regarding aggravating and mitigating circumstances, to be used by trial courts in performing this function.

In *People* v. *Cheatham, supra,* 23 Cal.3d 829, we addressed the validity of the sentencing guidelines promulgated by the Judicial Council. In *Cheatham,* a defendant sentenced to the upper term for first degree burglary (§§ 459, 460) challenged the validity of those guidelines, set forth in rules 421(b) and 423(b), that authorized a court to consider "facts relating to the defendant" as circumstances in aggravation or mitigation of a crime. In that case, the sentencing court based its imposition of the upper-term sentence upon two factors in aggravation—defendant was on parole when he committed the

burglary, and his prior convictions as an adult were of increasing serious-
ness. (*People* v. *Cheatham, supra*, 23 Cal.3d at p. 832.) We upheld the
validity of the rules, finding them consistent with the intent underlying
section 1170, subdivision (b), and observing: "In order to promote unifor-
mity of sentencing under [section 1170, subd. (b)] . . . the Judicial Council
adopted rules 421 and 423, dealing respectively with circumstances in
aggravation and mitigation of an offense. (Judicial Council of Cal., Annual
Rep. (1978) p. 3.) [¶] 'Facts relating to the crime' are set forth in subdivision
(a), and 'facts relating to the defendant' in subdivision (b) of each rule. The
facts relating to the defendant which bear on aggravation 'includ[e] the fact
that: (1) He has engaged in a pattern of violent conduct which indicates a
serious danger to society. (2) The defendant's prior convictions as an adult
or adjudications of commission of crimes as a juvenile are numerous or of
increasing seriousness. (3) The defendant has served prior prison terms
whether or not charged or chargeable as an enhancement under section
667.5. (4) *The defendant was on probation or parole when he committed the
crime.* (5) The defendant's prior performance on probation or parole was
unsatisfactory.' (Cal. Rules of Court, rule 421(b).)" (*People* v. *Cheatham,
supra*, 23 Cal.3d at pp. 832-833, italics added.)[4]

Our analysis in *Cheatham* was consistent with earlier decisions in which
we held that sentencing decisions must take into account the " 'nature of the
offense and/or the offender, with particular regard to the degree of danger
both present to society.' " (*In re Rodriguez* (1975) 14 Cal.3d 639, 654 [122
Cal.Rptr. 552, 537 P.2d 384], quoting *In re Lynch* (1972) 8 Cal.3d 410, 425
[105 Cal.Rptr. 217, 503 P.2d 921]; see also *Gregg* v. *Georgia* (1976) 428
U.S. 153, 189 [49 L.Ed.2d 859, 883-884, 96 S.Ct. 2909].)

Although the DSA from its inception included sentence enhancements,
originally the statutes imposing such enhancements provided only a single

---

[4]The "facts relating to the crime" that bear upon aggravation "includ[e] the fact that: [¶] (1)
The crime involved great violence, great bodily harm, threat of great bodily harm, or other
acts disclosing a high degree of cruelty, viciousness, or callousness. [¶] (2) The defendant was
armed with or used a weapon at the time of the commission of the crime. [¶] (3) The victim
was particularly vulnerable. [¶] (4) The defendant induced others to participate in the
commission of the crime or occupied a position of leadership or dominance of other
participants in its commission. [¶] (5) The defendant induced a minor to commit or assist in
the commission of the crime. [¶] (6) The defendant threatened witnesses, unlawfully pre-
vented or dissuaded witnesses from testifying, suborned perjury, or in any other way illegally
interfered with the judicial process. [¶] (7) The defendant was convicted of other crimes for
which consecutive sentences could have been imposed but for which concurrent sentences are
being imposed. [¶] (8) The manner in which the crime was carried out indicates planning,
sophistication, or professionalism. [¶] (9) The crime involved an attempted or actual taking or
damage of great monetary value. [¶] (10) The crime involved a large quantity of contraband.
[¶] (11) The defendant took advantage of a position of trust or confidence to commit the
offense." (Rule 421(a).)

term, rather than a range of possible terms. Thus, the only sentencing discretion initially afforded trial courts with regard to enhancements was the discretion to impose or strike (or stay) the enhancement. Thereafter, in 1989, the Legislature amended several existing enhancement provisions by replacing the single term of imprisonment, specified for the enhancement, with a range of three possible terms of imprisonment. In the course of one such revision, the Legislature amended section 12022.5, subdivision (a), changing the enhancement for use of a firearm from two years to three, four, or five years.[5]

In response to the 1989 amendments, the Judicial Council promulgated rule 428, which addresses the subject of the general criteria affecting sentence selection for enhancements. The rule specifies that, when a defendant is subject to an enhancement for which three possible terms are specified by statute, the middle term shall be imposed unless there exist circumstances in aggravation or mitigation (or unless the enhancement is stricken or stayed). The rule also provides that the lower term may be imposed "based upon any of the circumstances in mitigation enumerated in these rules or, under rule 408, any other reasonable circumstances in mitigation that are present." Finally, the rule includes the provision, challenged by the People in the present case, that specifies: "The upper term may be imposed for an enhancement only when there are circumstances in aggravation that relate directly to the fact giving rise to the enhancement."[6]

As noted above, the People contend that the Judicial Council exceeded its authority by limiting the aggravating circumstances that may be considered by the trial court, in determining whether to impose the upper term for an enhancement, to "circumstances in aggravation that relate directly to the fact giving rise to the enhancement." The People argue that, in the context of a sentence enhancement, the Legislature intended to permit a

---

[5]We grant the parties' request to take judicial notice of certain documents that describe the legislative history of Assembly Bill No. 1504 (1989-1990 Reg. Sess.), the bill that enacted Statutes 1989, chapter 1167, section 5, page 4529, amending section 12022.5, subdivision (a), to provide a three-tiered sentencing scheme for enhancements involving use of a firearm. (Evid. Code, §§ 450-452; *Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].) Our review of this legislative history, however, fails to shed any light upon the issues presented to us in the present case.

[6]Rule 428(b) provides in full:

"When the defendant is subject to an enhancement that was charged and found true for which three possible terms are specified by statute, the middle term shall be imposed unless there are circumstances in aggravation or mitigation or unless, under statutory discretion, the judge strikes the additional term for the enhancement.

"The upper term may be imposed for an enhancement only when there are circumstances in aggravation that relate directly to the fact giving rise to the enhancement. The lower term may be imposed based upon any of the circumstances in mitigation enumerated in these rules or, under rule 408, any other reasonable circumstances in mitigation that are present."

trial court to rely upon *any aggravating circumstance* that would justify imposition of the upper term for the underlying substantive offense.

The Judicial Council's authority under section 1170.3 is not unlimited, of course, and the council may not adopt rules that are inconsistent with the governing statutes. (*In re Robin M.* (1978) 21 Cal.3d 337, 346 [146 Cal.Rptr. 352, 579 P.2d 1] [invalidating a rule of court to the extent it was inconsistent with legislative intent]; see also *In re Dorothy B.* (1986) 182 Cal.App.3d 509, 516 [227 Cal.Rptr. 472]; *Paul D.* v. *Superior Court* (1984) 158 Cal.App.3d 838, 841 [205 Cal.Rptr. 77].) The People contend that is what the Judicial Council has done in adopting rule 428(b), which they view as inconsistent with the principles underlying the DSA, as reflected in section 1170.

In our view, the provisions of section 1170, subdivision (b), support the People's position. That statute provides: "In determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing. . . ."[7] The People contend that the quoted portion of section 1170, subdivision (b), implies that the trial court may consider aggravating circumstances that relate to the

---

[7]Section 1170 provides in pertinent part:

"(a)  [¶]. . . [¶] (2) In any case in which the punishment prescribed by statute for a person convicted of a public offense is a term of imprisonment in the state prison of . . . any . . . specification of three time periods, the court shall sentence the defendant to one of the terms of imprisonment specified . . . . In sentencing the convicted person, the court shall apply the sentencing rules of the Judicial Council. . . .

"(b)  When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime. At least four days prior to the time set for imposition of judgment, either party or the victim, or the family of the victim if the victim is deceased, may submit a statement in aggravation or mitigation to dispute facts in the record or the probation officer's report, or to present additional facts. In determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing. The court shall set forth on the record the facts and reasons for imposing the upper or lower term. The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under Section 667.5, 1170.1, 12022, 12022.4, 12022.5, 12022.6, or 12022.7 or under any other section of law. A term of imprisonment shall not be specified if imposition of sentence is suspended.

"(c)  The court shall state the reasons for its sentence choice on the record at the time of sentencing. . . ."

defendant, such as his status as a parolee, because such information is likely to be included in the various specified reports.

Our decision in *People* v. *Cheatham, supra,* 23 Cal.3d 829, is instructive. In that case, as indicated earlier, we rejected the contention that the Legislature intended to preclude consideration of the defendant's personal history in determining whether to impose the upper or lower term under section 1170. Observing that a probation report obviously covers not only the circumstances of the crime, but also the prior history and record of the defendant, we concluded: "[T]he Legislature *intended the sentencing court to consider the defendant's prior history and record,* as well as facts relating to the commission of the crime, in determining whether there are circumstances that justify imposition of the upper or lower term." (23 Cal.3d at p. 836, italics added.) Thereafter, in *People* v. *Wright, supra,* 30 Cal.3d 705, we underscored the relevance under section 1170 of both the crime and the criminal to the sentencing decision, observing: "Changing from the system of indeterminate sentences to determinate sentences and fixing the alternative terms, *the Legislature made the fundamental policy decision that terms were to be fixed by choosing one of the alternatives on the basis of circumstances relating to the crime and to the defendant.*" (30 Cal.3d at p. 713, italics added.)

Thus, we clearly have held that the Legislature contemplated the use of factors relating both to the crime *and to the defendant* in imposing the upper or lower term. The fact that *Cheatham* and *Wright* were concerned with substantive offenses rather than enhancements does not alter their analysis of the legislative intent underlying section 1170, which governs sentencing both with respect to substantive offenses and enhancements.

The People further contend that the Judicial Council's promulgation of rule 428(b) conflicts with the Legislature's intent in amending the various enhancement provisions in 1989 to provide for three alternative enhancement terms. The People reason that, because at the time the Legislature enacted the new enhancement provisions, existing Judicial Council rules permitted *any circumstance in aggravation* to be used to support imposition of an upper-term sentence on specified substantive offenses, it is reasonable to conclude that the Legislature contemplated that those same rules would apply to the imposition of an upper term for a sentence enhancement. We find this argument persuasive. Nothing in the language of the 1989 statutes, or in their history, suggests that the Legislature intended that the Judicial Council narrow the universe of factors previously held to be relevant to a trial court's sentencing decision. (See *People* v. *Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078] [the Legislature "is deemed to

be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof"]; *In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11 [210 Cal.Rptr. 631, 694 P.2d 744] [same].)

In adopting a three-tiered enhancement scheme in 1989, we believe the Legislature contemplated that courts would make the determination as to which of three possible terms to impose, on the basis of a consideration of the same aggravating and mitigating circumstances that traditionally have been applied under the DSA. Although the Legislature did not specifically preclude the Judicial Council from adopting a different policy with regard to the types of aggravating and mitigating circumstances that should be used for sentence enhancements, as opposed to substantive offenses, the Legislature did not alter the terms of section 1170, subdivision (b), a provision that—as we held in *Cheatham*—demonstrates the Legislature's intent that aggravating circumstances, relating to the defendant's background and status, constitute proper matters for consideration by a court in sentencing under the DSA. In view of the established practice under the DSA, which authorized sentencing courts to consider the full range of aggravating and mitigating circumstances in deciding which of three possible sentences to impose, we conclude that the Legislature, in enacting the 1989 legislation incorporating the same three-tiered sentencing framework into the sentence-enhancement procedures and leaving the terms of section 1170, subdivision (b), intact, intended that sentencing courts similarly would consider the full range of mitigating and aggravating circumstances (including those relating to the defendant as well as those relating to the offense itself) in choosing which sentence-enhancement term to impose.

Although defendant contends that application of rule 428(b) would further the legislative purpose of obtaining greater consistency in sentencing, we are of the view that, as a practical matter, the rule might well produce precisely the opposite effect. In recent years, the Legislature increasingly has relied upon the three-tiered sentencing structure, incorporating it within numerous preexisting and new enhancement provisions, in an effort to combat various types of crime—notably offenses involving criminal gang activity, drive-by shootings, hate crimes, illegal drugs, sexual violations, and the use of dangerous weapons.[8] If, as rule 428(b) provides, a trial court may impose the upper term for each one of these enhancements only with regard to circumstances in aggravation "that relate directly to the fact giving rise to the

---

[8]See, e.g., section 186.22, subdivision (a) (criminal street-gang participation); section 186.22, subdivision (b)(1) (felony committed within 1,000 feet of a school, for the benefit of, at the direction of, or in association with a criminal street gang); section 422.75, subdivision (a) (felony or attempted felony committed because of the victim's race, color, religion, nationality, country of origin, ancestry, disability, or sexual orientation); section 422.75, subdivision (b) (same, acting in concert with another); section 12021.5 (possession of a firearm during commission or attempted commission of a felony street-gang offense); section

enhancement," a proliferation of decisions pertaining to each one of these enhancement provisions inevitably would ensue, with various judicial opinions attempting to establish whether a particular circumstance in aggravation "relate[s] directly to" the fact giving rise to the particular enhancement at issue in a given case. As a result, rather than the trial courts' being able to apply consistently an established and familiar set of aggravating and mitigating factors in their sentencing decisions in all settings, they likely would be confronted with an unduly complex patchwork of factors to be considered in various contexts arising under rule 428(b). In our view, the Legislature, in seeking to promote uniformity in sentencing, neither contemplated nor intended such a burdensome or potentially inconsistent sentencing scheme.

Because the Judicial Council's authority under section 1170.3 does not extend to the adoption of rules that are inconsistent with governing statutes, we conclude that, insofar as it limits a trial court's discretion to consider the full range of aggravating factors that traditionally have been relied upon under the DSA, rule 428(b) conflicts with the governing statutes and therefore is invalid.

### B.

Having determined that the Judicial Council exceeded its authority in promulgating rule 428(b), the only question remaining before us is whether the trial court's reliance upon defendant's parole status as a circumstance in

---

12022, subdivision (b) (use of a deadly or dangerous weapon during a carjacking or attempted carjacking); section 12022, subdivision (c) (possession of a firearm during commission or attempted commission of a drug-related crime); section 12022, subdivisioin (d) (participation in an offense enumerated in § 12022, subd. (c), where the unarmed participant knows that another principal is personally armed with a firearm); section 12022.2, subdivision (a) (possession of metal-piercing or armor-piercing ammunition while armed with a firearm during commission or attempted commission of a felony); section 12022.2, subdivision (b) (commission or attempted commission of a violent offense by a person wearing a bullet-resistant vest); section 12022.3, subdivision (a) (use of a firearm or a deadly weapon during commission of a sex offense); section 12022.3, subdivision (b) (sex offense committed while the offender is armed with a firearm or a deadly weapon); section 12022.4 (furnishing [or offering to furnish] a firearm to another during the commission or attempted commission of a felony); section 12022.5, subdivision (a) (use of a firearm during commission or attempted commission of a carjacking or other felony); section 12022.5, subdivision (b)(1) (discharge of a firearm at an occupied motor vehicle); section 12022.5, subdivision (b)(2) (use of an assault weapon or a machine gun in the commission or attempted commission of a felony); section 12022.5, subdivision (c) (use of a firearm during commission or attempted commission of certain drug-related offenses); section 12022.55 (discharge of a firearm from a motor vehicle in the commission or attempted commission of a felony); see also Health and Safety Code section 11353.6, subdivision (b) (drug-related offense committed by a person 18 years of age or older, within 1,000 feet of a school); and Health and Safety Code section 11353.6, subdivision (c) (same, when the offense "involves a minor who is at least four years younger than [the charged offender]").

aggravation, warranting imposition of the upper term on the firearm-use enhancement, is permissible under the traditional sentencing guidelines set forth in rules 421 and 423. Because these guidelines specifically permit the court to consider, as a circumstance in aggravation, whether the defendant was on parole at the time the offense was committed, we conclude that the trial court did not err in the present case in relying upon that circumstance in aggravation.[9]

## III.

The judgment of the Court of Appeal is reversed insofar as it upholds the validity of rule 428(b) and modifies the term imposed upon defendant for the firearm-use enhancement. In all other respects the judgment is affirmed.

Lucas, C. J., Mosk, J., Kennard, J., Arabian, J., Baxter, J., and Werdegar, J., concurred.

Appellant's petition for a rehearing was denied January 25, 1995.

---

[9]In *People* v. *Edwards* (1993) 13 Cal.App.4th 75 [16 Cal.Rptr.2d 572], the Court of Appeal held that, under rule 428(b), the trial court improperly relied upon the defendant's status as a probationer in imposing the upper term on the enhancement for use of a firearm, but the validity of section 428(b) was not challenged in that decision. We disapprove *Edwards* insofar as it is inconsistent with the views expressed in our opinion.