1 Cal.Rptr.3d 233 (2003)
109 Cal.App.4th 1520
The PEOPLE, Plaintiff and Respondent,
v.
Alonza Rydell THOMAS, Jr., Defendant and Appellant.
No. F037501.
Court of Appeal, Fifth District.
June 26, 2003.
Review Granted October 1, 2003.
*235 Athena Shudde, under appointment by the Court of Appeal, San Diego, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Jeffrey D. Firestone, Louis M. Vasquez and Michelle L. West, Deputy Attorneys General, for Plaintiff and Respondent.

*234 OPINION
GOMES, J.
The issue on appeal is whether a court has discretion to order a juvenile disposition after a 15-year-old minor with no known prior criminal history pleads guilty to second degree robbery and admits personal firearm use on a "discretionary direct file" for which Proposition 21 authorizes, but does not mandate, a criminal trial instead of a juvenile hearing.[1] The minor, Alonza Rydell Thomas, Jr., entered a store with a firearm and demanded money. After the firearm discharged in a struggle for control of the weapon, harming no one, store clerks subdued him. The prosecutor charged him with, inter alia, second degree robbery with personal firearm use. (Pen.Code, §§ 211, 212.5, subd. (c), 12022.5, subd. (a), 12022.53, subd. (b).) At age 16, he pled guilty to second degree robbery, admitted the personal firearm use allegation, and made a motion for a juvenile disposition. (Pen.Code, §§ 211, 212.5, subd. (c), 12022.53, subd. (b).) After the prosecutor opposed, and the court denied, his motion, the court imposed a state prison sentence.
Before adjudicating the issue on appeal, we must address three foundational questions: Is Proposition 21 constitutional? Does the statutory requirement that a prosecutor consent before a court can order a juvenile disposition on a discretionary direct file violate the state Constitution's separation of powers doctrine?[2] Does a post-Proposition 21 statute that the Legislature passed unanimously and that changes to the accused's benefit the applicability of a statute within Proposition 21 operate retrospectively? [3] We will answer all three questions in the affirmative.
On the facts and the law here, we will hold that a court has express statutory discretion to order placement in a juvenile hall, ranch, camp, or the Youth Authority or to impose an adult sentence instead. The record shows no awareness by the court of that discretion, however, so we will affirm the judgment, order the state prison sentence stricken from the judgment, and remand the matter for an exercise of informed judicial discretion.

*236 DISCUSSION

I. Constitutionality of Proposition 21
Thomas argues that Proposition 21 violates the single-subject initiative rule (Cal. Const., art. II, § 8, subd. (d)) and that the discretionary direct file authority enacted into Welfare and Institutions Code section 707, subdivision (d) by Proposition 21 violates state constitutional guarantees of separation of powers (Cal. Const., art. III, § 3), equal protection of the laws (id., art. I, § 7, subd. (a)), uniform operation of laws (id., art. IV, § 16), and due process of law (id., art. I, §§ 7, subd. (a), 15).
After briefing was complete here, the Supreme Court adjudicated challenges like Thomas's. The court held that Proposition 21 does not violate the single-subject initiative rule (Cal. Const., art. II, § 8, subd. (d)), that the grant of discretion to the prosecutor by Welfare and Institutions Code section 707, subdivision (d) to file criminal charges against certain minors without a judicial fitness hearing does not violate the separation of powers doctrine (Cal. Const., art. III, § 3), that the elimination of a judicial fitness hearing by that statute does not violate due process of law (Cal. Const, art. I, §§ 7, subd. (a), 15), and that the grant of discretion to the prosecutor by Welfare and Institutions Code section 707, subdivision (d) to file criminal charges against some minors but not others does not violate equal protection of the laws (Cal. Const., art. I, § 7, subd. (a)) or the uniform operation of the laws doctrine (id., art. IV, § 16). (Manduley v. Superior Court (2002) 27 Cal.4th 537, 550-562, 117 Cal.Rptr.2d 168, 41 P.3d 3.)

II. Constitutionality of Penal Code section 1170.19, subdivision (a)(4)
Thomas argues that a court has discretion to order a juvenile disposition on a discretionary direct file. The Attorney General argues the contrary. At the heart of the issue is a statute requiring a court to secure a prosecutor's consent to order a juvenile disposition on a discretionary direct file:
"Notwithstanding any other provision of law, the following shall apply to a person sentenced pursuant to Section 1170.17.[¶] ... [¶] (4) Subject to the knowing and intelligent consent of both the prosecution and the person being sentenced pursuant to this section, the court may order a juvenile disposition under the juvenile court law, in lieu of a sentence under this code, upon a finding that such an order would serve the best interests of justice, protection of the community, and the person being sentenced. Prior to ordering a juvenile disposition, the court shall cause to be received into evidence a social study by the probation officer, prepared pursuant to Section 706 of the Welfare and Institutions Code, and shall state that the social study made by the probation officer has been read and considered by the court." (Pen.Code, § 1170.19, subd. (a)(4), italics added.)
On the threshold question of whether requiring a prosecutor's consent violates the state Constitution's separation of powers doctrine, we examine relevant case law. (See Cal. Const, art. III, § 3.[4])
In the seminal case of People v. Tenorio (1970) 3 Cal.3d 89, 91-95, 89 Cal.Rptr. 249, 473 P.2d 993 (Tenorio), the Supreme Court held that a statute requiring a court to secure a prosecutor's consent to dismiss *237 an allegation of a prior conviction violates the state Constitution's separation of powers doctrine by improperly invading the constitutional province of the judiciary:
"When the decision to prosecute has been made, the process which leads to acquittal or to sentencing is fundamentally judicial in nature. Just as the fact of prosecutorial discretion prior to charging a criminal offense does not imply prosecutorial discretion to convict without a judicial determination of guilt, discretion to forgo prosecution does not imply discretion to sentence without a judicial determination of those factors which the Legislature has never denied are within the judicial power to determine and which relate to punishment. The judicial power is compromised when a judge, who believes that a charge should be dismissed in the interests of justice, wishes to exercise the power to dismiss but finds that before he may do so he must bargain with the prosecutor. The judicial power must be independent, and a judge should never be required to pay for its exercise." (Id. at p. 94, 89 Cal.Rptr. 249, 473 P.2d 993.)
In the years after Tenorio, the Supreme Court applied the rationale of that case to several analogous situations. In Esteybar v. Municipal Court (1971) 5 Cal.3d 119, 122, 95 Cal.Rptr. 524, 485 P.2d 1140, the court held that a statute requiring a magistrate to secure a prosecutor's consent to determine that a wobbler is a misdemeanor rather than a felony violates the separation of powers doctrine (see Pen.Code, § 17, subd. (b)):
"Since the exercise of a judicial power may not be conditioned upon the approval of either the executive or legislative branches of government, requiring the district attorney's consent in determining the charge on which a defendant shall be held to answer violates the doctrine of separation of powers." (Esteybar v. Municipal Court, supra, 5 Cal.3d at p. 127, 95 Cal.Rptr. 524, 485 P.2d 1140.)
In People v. Navarro (1972) 7 Cal.3d 248, 258-260, 102 Cal.Rptr. 137, 497 P.2d 481, the Supreme Court held that a statute requiring a court to secure a prosecutor's consent to order a posttrial commitment to a narcotic detention, treatment, and rehabilitation facility violates the separation of powers doctrine:
"The imposition of sentence and the exercise of sentencing discretion are fundamentally and inherently judicial functions. [Citation.] ... [¶] ... [¶] `It bears reiteration that the Legislature, of course, by general laws can control eligibility for probation, parole and the term of imprisonment, but it cannot abort the judicial process by subjecting a judge to the control of the district attorney.'" (Id. at pp. 258-259, 102 Cal.Rptr. 137, 497 P.2d 481, fns. omitted.)
In People v. Superior Court (On Tai Ho) (1974) 11 Cal.3d 59, 61, 113 Cal. Rptr. 21, 520 P.2d 405, the Supreme Court held that a statute requiring a court to secure a prosecutor's consent to order pretrial diversion to a narcotic treatment and rehabilitation program violates the separation of powers doctrine:
"[W]hen the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the disposition of that charge becomes a judicial responsibility.... With the development of more sophisticated responses to the wide range of antisocial behavior traditionally subsumed under the heading of `crime,' alternative means of disposition have been confided to the judiciary." (Id, at p. 66, 113 Cal.Rptr. 21, 520 P.2d 405.)
In Davis v. Municipal Court (1988) 46 Cal.3d 64, 69-72, 249 Cal.Rptr. 300, 757 P.2d 11, the court held that a local rule on *238 wobblers precluding diversion to those whom a prosecutor charges with felonies while permitting diversion to those whom a prosecutor charges with misdemeanors does not violate the separation of powers doctrine. The local rule granted discretion that a prosecutor could exercise before the filing of a criminal charge, but the challenged statutes at issue in Tenorio and progeny "purported to give a prosecutor the right to veto a decision made by a court after criminal charges had already been filed. None of the cases suggests that the exercise of prosecutorial discretion prior to the filing of such charges improperly subordinates the judicial branch to the executive in violation of the Constitution, even though the prosecutor's exercise of such
charging discretion inevitably affects the sentencing or other dispositional options available to the court." (Davis v. Municipal Court, supra, at p. 82, 249 Cal.Rptr. 300, 757 P.2d 11.) Like the challenged statutes at issue in Tenorio and progeny, Penal Code section 1170.19, subdivision (a)(4) purports to give a prosecutor the right to veto a decision that a court makes after the filing of a criminal charge.
Manduley stresses the critical distinction between discretion before and discretion after the filing of a criminal charge. Tenorio and progeny "establish that the separation of powers doctrine prohibits the legislative branch from granting prosecutors the authority, after charges have been filed, to control the legislatively specified sentencing choices available to a court. A statute conferring upon prosecutors the discretion to make certain decisions before the filing of charges, on the other hand, is not invalid simply because the prosecutor's exercise of such charging discretion necessarily affects the dispositional options available to the court." (Manduley v. Superior Court, supra, 27 Cal.4th at p. 553, 117 Cal.Rptr.2d 168, 41 P.3d 3.) "Because [Welfare and Institutions Code] section 707(d) does not confer upon the prosecutor any authority to interfere with the court's choice of legislatively specified sentencing alternatives after an action has been commenced pursuant to that statute, we conclude that section 707(d) does not violate the separation of powers doctrine." (Ibid.)
In People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628 (Romero), the Supreme Court approved the application of the rationale in Tenorio to analogous situations in later cases and stated the fundamental principle in that line of authority: "When the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the disposition of that charge becomes a judicial responsibility." (Romero, supra, at p. 517, 53 Cal.Rptr.2d 789, 917 P.2d 628.) Romero implemented that principle and avoided finding a violation of the separation of powers doctrine by construing a provision of the three strikes law so as not to require a prosecutor's consent to the exercise of a court's authority on its own motion to strike a strike prior at sentencing. (Id. at pp. 508-517, 53 Cal. Rptr.2d 789, 917 P.2d 628; Pen.Code, §§ 667, subd. (f), 1385.)
The discretion that Penal Code section 1170.19, subdivision (a)(4) grants to a court to order a juvenile disposition on a discretionary direct file indisputably constitutes a judicial responsibility squarely within the scope of "[a]ll of the subsequent cases applying Tenorio to invalidate legislative provisions...." (See Davis v. Municipal Court, supra, 46 Cal.3d at p. 83, 249 Cal. Rptr. 300, 757 P.2d 11.) Like the statutes in Tenorio and progeny, Penal Code section 1170.19, subdivision (a)(4) authorizes "the exercise of a prosecutorial veto after the filing of criminal charges, when the criminal proceeding has already come *239 within the aegis of the judicial branch." (Davis v. Municipal Court, supra, at p. 83, 249 Cal.Rptr. 300, 757 P.2d 11.)
We hold that the requirement of Penal Code section 1170.19, subdivision (a)(4) that on a discretionary direct file a court must secure a prosecutor's consent to order a juvenile disposition violates the state Constitution's separation of powers doctrine.[5] (Cal. Const., art. III, § 3.) Since the constitutionally infirm requirement of a prosecutor's consent is severable from the rest of that statute (see People v. Navarro, supra, 7 Cal.3d at pp. 260-264, 102 Cal.Rptr. 137, 497 P.2d 481), we turn to the issue of whether Thomas is entitled to relief from the denial of his motion for a juvenile disposition.[6]

III. Informed judicial discretion on a discretionary direct file
Thomas argues that the court was not aware of its discretion on a discretionary direct file to order a juvenile disposition or to impose an adult sentence and that a remand is necessary to allow the court to exercise that discretion. The Attorney General argues that the court had no discretion and that no remand is necessary.
Proposition 21 mandates a criminal prosecution, without a judicial fitness hearing, of a minor 14 years of age or older whom a prosecutor charges with a specified murder or serious sex offense. (Welf. & Inst.Code, § 602, subd. (b).) Proposition 21 authorizes a discretionary direct file, without a judicial fitness hearing, of a minor 14 years of age or older against whom a prosecutor brings a different statutorily designated charge or allegation. (Welf. & Inst.Code, § 707, subd. (d)(2).) Here, the allegation of personal firearm use authorized the discretionary direct file against Thomas. (Pen.Code, § 12022.5, subd. (a); Welf. & Inst.Code, § 707, subd. (d)(2)(B).)
Commenting on Welfare and Institutions Code section 707, subdivision (d), the statute at issue in Manduley, the Supreme Court observed that "[t]he prosecutor's discretionary charging decision ... is no different from the numerous prefiling decisions made by prosecutors ... that limit the dispositions available to the court after charges have been filed. Conferring such authority upon the prosecutor does not limit the judicial power, after charges have been filed, to choose among the dispositional alternatives specified by the legislative branch." (Manduley v. Superior Court, supra, 27 Cal.4th at p. 555, 117 Cal.Rptr.2d 168, 41 P.3d 3, italics added.) One of those alternatives is the discretion that Penal Code section 1170.19, subdivision (a)(4) grants to a court to order a juvenile disposition on a discretionary direct file. Manduley characterizes as only a general rule the statutory preclusion of a juvenile disposition by Welfare and Institutions Code section 707, subdivision (d): "If the prosecutor initiates a proceeding in criminal court, and the circumstances specified in section 707(d) are found to be true, the court generally is precluded by statute from ordering a juvenile disposition. (Welf. & Inst.Code, § 1732.6, subd. (b)(2); see Pen.Code, §§ 1170.17, 1170.19.)" *240 (Manduley v. Superior Court, supra, at p. 555, 117 Cal.Rptr.2d 168, 41 P.3d 3, italics added.)
In Manduley, the Supreme Court noted that the prosecutor's "traditionally ... broad power to charge crimes extends to selecting the forum...." (Manduley v. Superior Court, supra, 27 Cal.4th at p. 552, 117 Cal.Rptr.2d 168, 41 P.3d 3.) By selecting the forum, the prosecutor selects the procedure and protocol of that forum. By choosing a discretionary direct file, the prosecutor not only invokes the rigorous adversarial character of a criminal trial but also adds a dimension of evidence, findings, and rulings with which to inform the exercise of judicial discretion in selecting a juvenile disposition or an adult sentence.
As the Supreme Court observed, the "voters, through the enactment of Proposition 21, have determined that the judiciary shall not make the determination regarding a minor's fitness for a juvenile disposition where the prosecutor initiates a criminal action pursuant to [Welfare and Institutions Code] section 707(d)." (Manduley v. Superior Court, supra, 27 Cal.4th at p. 555, 117 Cal.Rptr.2d 168, 41 P.3d 3, fn. omitted.) We read that sentence as an articulation of the statutory mandate of Welfare and Institutions Code section 707, subdivision (d)(4): "In any case in which the district attorney ... has filed an accusatory pleading against a minor in a court of criminal jurisdiction pursuant to the provisions of this subdivision, the case shall then proceed according to the laws applicable to a criminal case."
For two reasons, we decline to make a broader inference from that sentence. First, not once did Manduley cite Penal Code section 1170.19, subdivision (a)(4), the part of that statute in which the Legislature expressly granted judicial discretion to order a juvenile disposition on a discretionary direct file. That part of that statute was simply not at issue in that case. It is axiomatic that cases are not authority for propositions not considered. (People v. Nguyen (2000) 22 Cal.4th 872, 879, 95 Cal.Rptr.2d 178, 997 P.2d 493; People v. Gilbert (1969) 1 Cal.3d 475, 482, fn. 7, 82 Cal.Rptr. 724, 462 P.2d 580.) Second, Manduley itself notes that "a prosecutor's decision to file charges against a minor in criminal court pursuant to [Welfare and Institutions Code] section 707(d) is not analogous to a prosecutor's veto of a court's legislatively authorized determination, after a judicial hearing, of a defendant's suitability for a particular disposition...." (Manduley v. Superior Court, supra, 27 Cal.4th at p. 559, 117 Cal.Rptr.2d 168, 41 P.3d 3.)
On that rationale, as the prosecutor's authority in Welfare and Institutions Code section 707, subdivision (d) to make a discretionary direct file survives a separation of powers analysis, so the requirement in Penal Code section 1170.19, subdivision (a)(4) that a court secure a prosecutor's consent to order a juvenile disposition on a discretionary direct file does not. In short, a prosecutor's exercise of discretion before the filing of a criminal charge is not at all inconsistent with a court's exercise of discretion after the filing of a criminal charge.
After a finding of guilt on a discretionary direct file, a court has express statutory discretion to choose among statutorily permissible juvenile dispositions or to impose an adult sentence instead. (See Pen.Code, §§ 1170.17, subd. (a), 1170.19, subds. (a), (b); Welf. & Inst.Code, § 1732.6, subds. (a), (b).) "Notwithstanding any other provision of law," Penal Code section 1170.19, subdivision (a)(4) authorizes a court to order a juvenile disposition after reading, considering, and entering into evidence a social study of the minor by the probation officer and after *241 making "a finding that such an order would serve the best interests of justice, protection of the community, and the person being sentenced." (Pen.Code, § 1170.19, subd. (a)(4), italics added; see id., subd. (a)(1); Welf. & Inst.Code, §§ 706,1732.6, subds. (a), (b).) If the facts of a case satisfy any one of several statutory conditions, however, Penal Code section 1170.19, subdivision (a)(1) (through incorporation by reference of Welfare and Institutions Code section 1732.6) precludesat least faciallythe exercise of that discretion to order a Youth Authority commitment. (Pen.Code § 1170.19, subd. (a)(1), (a)(4); Welf. & Inst.Code, § 1732.6, subds. (a), (b).)
That Thomas was a minor 14 years of age or older who admitted a personal firearm use allegation satisfies one of those statutory conditions so as to invoke that facial preclusion of the court's exercise of that discretion to order a Youth Authority commitment.[7] (Pen.Code, §§ 1170.17, subd. (a), 1170.19, subd. (a)(1), (a)(4); Welf. & Inst.Code, §§ 707, subd. (d)(2)(B), 1732.6, subd. (b)(2).[8]) Welfare and Institutions Code section 602.3, subdivision (a), however, appears to eclipse that facial preclusion:
"Notwithstanding any other law and pursuant to the provisions of this section, the juvenile court shall commit any minor adjudicated to be a ward of the court for the personal use of a firearm in the commission of a violent felony, as defined in subdivision (c) of Section 667.5 of the Penal Code, to placement in a juvenile hall, ranch, camp, or with the Department of the Youth Authority." (Italics added. Added by Stats.1999, ch. 996, § 13, as Welf. & Inst.Code, § 602.5,[9] amended and renumbered by Stats.2001, ch. 854, § 73, as Welf. & Inst.Code, § 602.3.)
That statute not only reflects the general principle that a juvenile disposition can follow an adjudication that a minor committed the crime at issue (see Welf. & Inst.Code, § 602, subd. (a)) but also enumerates for a minor with personal firearm use the specific statutorily permissible juvenile dispositions "placement in a juvenile hall, ranch, camp, or with the Department of the Youth Authority" that a court has discretion to order as alternatives to imposition of an adult sentence (Welf. & Inst.Code, § 602.3, subd. (a); see Pen.Code, §§ 667.5, subd. (c)(9), 1170.17, subd. (a), 1170.19, subd. (a)(1), (a)(4)).
Whether Welfare and Institutions Code section 602.3, subdivision (a) operates retrospectively determines if the express authorization *242 by that statute of, inter alia, a Youth Authority commitment indeed does eclipse the express prohibition by Welfare and Institutions Code section 1732.6, subdivision (b)(2) of a Youth Authority commitment. The effective date of the former statute was January 1, 2002. (Welf. & Inst.Code, § 602.3, subd. (a); Stats.2001, ch. 854, § 73; see Cal. Const., art. IV, § 8, subd. (c)(2).) The effective date of the latter statute by Proposition 21 was March 8, 2000. (Welf. & Inst.Code, § 1732.6, subd. (b)(2); see Cal. Const., art. II, § 10, subd. (a).) By authorizing the Youth Authority commitment that Welfare and Institutions Code section 1732.6, subdivision (b)(2) precludes, Welfare and Institutions Code section 602.3, subdivision (a) manifestly changes the law to Thomas's benefit.
"It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise," but "other considerations affect the application of certain provisions which benefit defendants." (Tapia v. Superior Court (1991) 53 Cal.3d 282, 287 & fn. 3, 279 Cal.Rptr. 592, 807 P.2d 434; see generally Pen.Code, § 3.) If a statute's provisions "clearly benefit only defendants," application of those provisions "to trials of crimes committed before [the statute] operative date may change the legal consequences of a defendant's criminal conduct. Such application is permissible, however, because the provisions favor defendants. Although we usually presume that new statutes are intended to operate prospectively, that presumption `is not a straitjacket.' [Citation.]" (Tapia v. Superior Court, supra, at pp. 300-301, 279 Cal. Rptr. 592, 807 P.2d 434.)
The presumption of prospectivity in Penal Code section 3 does not "require a different conclusion because that section simply embodies the general, common law presumption that new statutes operate prospectively." (Tapia v. Superior Court, supra, 53 Cal.3d at p. 301, fn. 18, 279 Cal.Rptr. 592, 807 P.2d 434.) The Supreme Court has articulated an exception that is applicable here: "[W]e have not applied the presumption to statutes changing the law to the benefit of defendants." (Id. at p. 301, 279 Cal.Rptr. 592, 807 P.2d 434.) We do not apply the presumption to Welfare and Institutions Code section 602.3, subdivision (a) because that statute changes the law to Thomas's benefit. (See Tapia v. Superior Court, supra, at p. 287 & fn. 3, p. 301 & fn. 18, 279 Cal.Rptr. 592, 807 P.2d 434.)
Since the express authorization of a Youth Authority commitment by one statute is flatly irreconcilable with the express preclusion of a Youth Authority commitment by the other, we engage in statutory construction. "The first step is to examine the statute's words because they are generally the most reliable indicator of legislative intent." (Summers v. Newman (1999) 20 Cal.4th 1021, 1026, 86 Cal.Rptr.2d 303, 978 P.2d 1225.) "`Notwithstanding any other provisions of law'" is a term of art that is emblematic of "an express legislative intent to have the specific statute control despite the existence of other law which might otherwise govern." (People v. DeLaCruz (1993) 20 Cal. App.4th 955, 963, 25 Cal.Rptr.2d 202.) "This phrase has a special legal connotation; it is considered an express legislative intent that the specific statute in which it is contained controls in the circumstances covered by that statute, despite the existence of some other law which might otherwise apply to require a different or contrary outcome." (Souvannarath v. Hodden (2002) 95 Cal.App.4th 1115, 1125-1126, 116 Cal.Rptr.2d 7; see McClatchy Newspapers v. Superior Court *243 (1988) 44 Cal.3d 1162, 1182, 245 Cal.Rptr. 774, 751 P.2d 1329.) "The Legislature, of course, is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof." (People v. Harrison (1989) 48 Cal.3d 321, 329, 256 Cal.Rptr. 401, 768 P.2d 1078.)
Applying those established rules of statutory construction, we hold that the express authorization of a Youth Authority commitment by Welfare and Institutions Code section 602.3, subdivision (a) impliedly repeals the express preclusion of a Youth Authority commitment by Welfare and Institutions Code section 1732.6, subdivision (b)(2). (See Merrill v. Navegar, Inc. (2001) 26 Cal.4th 465, 487, 110 Cal. Rptr.2d 370, 28 P.3d 116.) Accordingly, the court here had discretion to order "placement in a juvenile hall, ranch, camp, or with the Department of the Youth Authority" or to impose an adult sentence instead.[10] (Welf. & Inst.Code, § 602.3, subd. (a); see Pen.Code, §§ 1170.17, subd. (a), 1170.19, subd. (a)(1), (a)(4).)
The Attorney General argues that a rule of court precludes the exercise of that discretion: "If the prosecuting attorney lawfully initiated the prosecution as a criminal case under Welfare and Institutions Code section 602(b) or 707(d), and the minor is convicted of a criminal offense listed in Welfare and Institutions Code section 602(b) or 707(b), the minor shall be sentenced as an adult." (Cal. Rules of Court, rule 4.510(a).) "To improve the administration of justice, the Judicial Council is authorized to `adopt rules for court administration, practice and procedure,' provided the rules are `not ... inconsistent with statute.'" (People v. Hester (2000) 22 Cal.4th 290, 294, 92 Cal.Rptr.2d 641, 992 P.2d 569, quoting Cal. Const., art. VI, § 6, subd. (d); see People v. Hall (1994) 8 Cal.4th 950, 960, 35 Cal.Rptr.2d 432, 883 P.2d 974.) "The hierarchy is well established: `[T]he rules promulgated by the Judicial Council are subordinate to statutes.'" (Cooper v. Westbrook Torrey Hills (2000) 81 Cal. App.4th 1294, 1299, 97 Cal.Rptr.2d 742.) "To the extent that a rule promulgated by the Judicial Council is inconsistent with a statute, it is invalid." (Maldonado v. Superior Court (1984) 162 Cal.App.3d 1259, 1265, 209 Cal.Rptr. 199.)
The Attorney General seeks to rely on legislative history for the argument that the court lacks that discretion. The statutory language is clear, however, that for a minor with personal firearm use a court can order "placement in a juvenile hall, ranch, camp, or with the Department of the Youth Authority." (Welf. & Inst. Code, § 602.3, subd. (a).) That invokes an established rule of statutory construction: "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (People v. Knowles (1950) 35 Cal.2d 175, 183, 217 P.2d 1, disapproved on another ground in People v. Beamon (1973) 8 Cal.3d 625, 637, fn. 9, 105 Cal.Rptr. 681, 504 P.2d 905, and superseded by statute on another ground as stated *244 in People v. Tribble (1971) 4 Cal.3d 826, 831, 94 Cal.Rptr. 613, 484 P.2d 589.)
The rationale for preserving informed judicial discretion to order "placement in a juvenile hall, ranch, camp, or with the Department of the Youth Authority" or to impose an adult sentence is readily understandable. (Welf. & Inst.Code, § 602.3, subd. (a).) If a prosecutor files neither a juvenile petition nor a criminal complaint within 48 hours after law enforcement takes a minor into custody for a felony, "the minor shall be released...." (Welf. & Inst.Code, § 631, subd. (a).) The information a prosecutor could possibly gather in that short a time about the minor and the crime is necessarily a small fraction of the information the criminal justice system can gather before the time finally arrives, after plea or verdict, for a court to exercise informed judicial discretion to order "placement in a juvenile hall, ranch, camp, or with the Department of the Youth Authority" or to impose an adult sentence instead. (Welf. & Inst.Code, § 602.3, subd. (a).) Even though only a few minors might actually receive a juvenile disposition on a discretionary direct file, the wisdom of preserving that discretion in all cases is empirically sound. Otherwise the judicial system will lose a safeguard against preclusion of a juvenile disposition simply because the law allows a prosecutor only 48 hours to gather information about the minor and the crime before the time expires for the exercise of discretion to file either a juvenile petition or a criminal complaint.
In some cases, the Attorney General's reading of the law could lead to other absurdities. If a circumstance that authorized a discretionary direct file were found not true, the Attorney General's reading of the law would mandate that the court impose an adult sentence even if the accused were found guilty only of a charge that did not authorize a discretionary direct file. (See Welf. & Inst.Code, § 707, subd. (d)(2).) Likewise, even if the criminal justice system on a discretionary direct file were to acquire information about the minor or the crime showing that a juvenile disposition "would serve the best interests of justice, protection of the community, and the person being sentenced," the Attorney General's reading of the law would mandate that the court impose an adult sentence. (Pen.Code, § 1170.19, subd. (a)(4).) If that were the law, a judicial system without a failsafe procedure to allow for the exercise of informed judicial discretion could but lament: "Wish I didn't know now what I didn't know then." (Seger, Bob, Against the Wind (Gear Publishing Co.1979).)
For those reasons, we reject the Attorney General's reading of the law and choose to abide by "the familiar canon of statutory construction that `courts must avoid statutory constructions that lead to illogical or absurd results.'" (Kavanaugh v. West Sonoma County Union High School Dist. (2003) 29 Cal.4th 911, 923-924, 129 Cal.Rptr.2d 811, 62 P.3d 54, quoting Mountain Lion Foundation v. Fish & Game Com. (1997) 16 Cal.4th 105, 142, 65 Cal.Rptr.2d 580, 939 P.2d 1280.) "Defendants are entitled to sentencing decisions made in the exercise of the `informed discretion' of the sentencing court." (People v. Belmontes (1983) 34 Cal.3d 335, 348, fn. 8, 193 Cal.Rptr. 882, 667 P.2d 686, quoting United States v. Tucker (1972) 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592; see Townsend v. Burke (1948) 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690; People v. Austin (1981) 30 Cal.3d 155, 160-161, 178 Cal.Rptr. 312, 636 P.2d 1.)

DISPOSITION
The judgment of conviction is affirmed, the state prison sentence is ordered stricken *245 from the judgment, and the matter is remanded for an exercise of informed judicial discretion on the issue of whether to order "placement in a juvenile hall, ranch, camp, or with the Department of the Youth Authority" or to impose an adult sentence instead. After the exercise of that discretion, the court shall prepare an amended abstract of judgment and shall send certified copies of that abstract to the appropriate persons.
WE CONCUR: BUCKLEY, Acting P.J., and CORNELL, J.
NOTES
[1] See the Gang Violence and Juvenile Crime Prevention Act of 1998. (Initiative Measure, Voter Information Guide, Primary Elec. (Mar. 7, 2000) Prop. 21 (hereafter Proposition 21).) The crime here occurred just days after the adoption of Proposition 21.
[2] See Penal Code section 1170.19, subdivision (a)(4).
[3] See Welfare and Institutions Code section 602.3. (Stats.2001, ch. 854, § 73.)
[4] California Constitution, article III, section 3 provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."
[5] Since Thomas requested a juvenile disposition, the issue is not before us whether the statutory requirement of the accused's consent is severable from the invalid requirement of a prosecutor's consent. (Cf. People v. Navarro, supra, 7 Cal.3d at pp. 264-265, 102 Cal.Rptr. 137, 497 P.2d 481.)
[6] Since Thomas requested a juvenile disposition through his counsel, we reject out of hand his argument that his counsel failed to preserve the issue for appellate review. (See Strickland v. Washington (1984) 466 U.S. 668, 693-694, 104 S.Ct. 2052, 80 L.Ed.2d 674; People v. Ledesma (1987) 43 Cal.3d 171, 217-218, 233 Cal.Rptr. 404, 729 P.2d 839.)
[7] Two statutes authorized the personal firearm use allegation in the information. (Pen. Code, §§ 12022.5, subd. (a)(1), 12022.53, subds. (a)(4), (b).) Authority for the discretionary direct file arose solely from personal firearm use "as described in" the former statute, which enhances punishment for the "commission or attempted commission" of a felony. (Pen.Code, § 12022.5, subd. (a)(1); see Welf. & Inst.Code, § 707, subd. (d)(2)(B).) Thomas admitted personal firearm use only under the latter statute, which enhances punishment solely for the "commission" of a felony. (Pen.Code, § 12022.53, subd. (b).) Since he pled guilty to the "commission" of a felony, the difference in the scope of the two statutes is immaterial here.
[8] Since admission of a personal firearm use allegation invokes the facial statutory preclusion of a Youth Authority commitment (Welf. & Inst.Code, §§ 707, subd. (d)(2)(B), 1732.6, subd. (b)(2)), we need not decide whether other facts here might likewise do so under other provisions of the latter statute. (See Welf. & Inst.Code, § 1732.6, subds. (a), (b).)
[9] The same chaptered statute in which the Legislature added former section 602.5 to the Welfare and Institutions Code added sections 1170.17 and 1170.19 to the Penal Code. (Stats.1999, ch. 996, §§ 12, 12.1, 13.)
[10] Proposition 21 prohibits legislative amendment of its provisions "except by a statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership of each house concurring, or by a statute that becomes effective only when approved by the voters." (Prop.21, § 39.) Assuming arguendo that the Legislature's post-Proposition 21 enactment of Welfare and Institutions Code section 602.3, subdivision (a) is subject to that prohibition, we note that the Assembly and the Senate both unanimously passed the bill containing the statute. (Sept. 13, 2001, Assem. J. (2001-2002 Reg. Sess.) p. 3874 [unanimous 76-0 rollcall vote]; Sept. 14, 2001, Sen. J. (2001-2002 Reg. Sess.) pp. 3030-3031, 3033 [unanimous 40-0 rollcall vote].)