[No. B169504. Second Dist., Div. Two. Oct. 19, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
MONTI KIRK STONE, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and II of the Discussion.

COUNSEL

Patricia A. Andreoni, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Joseph P. Lee and Stephanie A. Mitchell, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**NOTT, Acting P. J.**—Monti Kirk Stone appeals from a judgment entered upon his conviction by jury of assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1))[1] and making a criminal threat

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

(§ 422). The trial court sentenced him to an aggregate prison term of four years. Appellant contends that (1) the trial court erred in admitting prior bad acts evidence, (2) the trial court erred in refusing his request for a midtrial continuance to subpoena witnesses, (3) the trial court erred in denying his request to withdraw his in propria persona status, (4) he was denied his rights to due process and a fair trial by a series of impediments to presentation of his case, and (5) the trial court exceeded its jurisdiction by entering restraining orders against him that precluded his contacts with his victims.

We reverse the restraining orders and affirm the judgment.

## FACTS

Theodore Walton resided on Gadsden Avenue, in Lancaster, County of Los Angeles. Appellant resided with him, having responded to Walton's newspaper advertisement seeking a roommate. When Walton interviewed appellant, appellant told him that he was on probation for assault for a "silly" incident of which he was not guilty, but nonetheless went to prison. Walton subsequently learned the length of time appellant spent in prison. Walton told appellant during the interview that he was gay.

After they began rooming together, Walton observed things missing from the apartment. He asked appellant on four occasions if he had taken any of them. Appellant's response was always to holler or say, "No." On March 28, 2003, Walton noticed that all of the toilet paper had disappeared. At approximately 2:30 p.m., he was in the kitchen when appellant entered. As appellant was leaving, Walton asked if there was any toilet paper. Appellant turned around and punched Walton in the face, knocking him to the floor, stunned and surprised. Appellant straddled Walton while he was on the floor and punched him two more times in the face as he yelled, "I am going to kill you, faggot." Walton feared for his life, recalling that appellant had been in prison for assault. Appellant squeezed Walton's neck with his hands for 30 seconds. He got off of Walton only when Walton kneed him twice in the groin. Appellant then went into his bedroom.

Stephen Humphreys, Walton's houseguest, was asleep on the couch in the living room when the altercation occurred. He was awakened by "scuffling

sounds" in the kitchen. Although he was half asleep, he thought he heard someone say, "I am going to kill you, faggot." He did not see anyone in the kitchen over the chest-high wall that separated the kitchen and living room. Without getting up, he tried to go back to sleep.

Frightened and shaken, Walton went to his bedroom or the bathroom and then to the leasing office to telephone 911. The police arrived four or five hours later. From the leasing office, Walton returned to his apartment. Appellant had left to pick up his friend, Robert, who returned with him to the apartment.

As a result of appellant's assault, paramedics arrived and took Walton to Lancaster Community Hospital, where doctors gave him morphine injections for pain. Walton suffered a contusion on his brow, a black-and-blue eye and cheek and an exacerbation of a preexisting back injury. He also experienced severe head pain and headaches and could not sleep on his right side for several weeks.

Michele Magnosa testified to a prior assault by appellant. On December 21, 2000, appellant had been staying for 10 days at her home in Lancaster, where she resided with her husband and two children. He was Magnosa's brother's friend and had asked her if he could stay with her for only a day or two, because he was evicted from his residence. On the morning of December 21, 2000, Magnosa finally told appellant to leave. He became angry and yelled at her. She also told him that if he did anything to her, she would call the police. He threatened that if she called the police, he would kill her and her children. He then punched her on the right side of her face, knocking her to the floor. She got up and reiterated her demand that he leave. Appellant again punched her, knocking her to the floor where he continued punching her 20 to 30 times, mostly in the face, and also kicking her. When Magnosa got up and tried to leave the house, appellant grabbed her by the hair and threw her across the room. She finally escaped through the front door and went to her neighbor Kimberly Ernest's house. Ernest telephoned 911.

When the police arrived, Magnosa passed out and was taken by ambulance to an emergency room. The police took photographs of her injuries, which were introduced in evidence. She testified at trial that she still feared appellant.

Appellant presented no evidence in his defense.

## DISCUSSION

I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *Restraining orders*

After the jury had been instructed, the People requested the trial court to issue restraining orders restricting appellant's contact with Walton and Magnosa. The orders restrained appellant from "annoy[ing], harass[ing], strik[ing], threaten[ing] . . . or otherwise disturb[ing] the peace of the protected persons named." The order also required appellant to surrender to law enforcement authorities or sell to a licensed gun dealer any firearm in or subject to his immediate control within 48 hours and file a receipt with the court showing compliance with the order within 72 hours of receipt of the order.

The Judicial Council form utilized by the trial court for the order, form No. MC-220,[10] is entitled "Protective Order in Criminal Proceedings." The top of the form provided three boxes that could be checked, including a box stating, "Order Pending Trial," a box stating, "Order Post-trial Probation Condition" and a box stating, "Modification." Here, the trial court checked the box entitled, "Order Post-trial Probation Condition," and the orders provided that they were to expire on July 10, 2006.

Appellant contends that because he was not granted probation, a restraining order that is a probation condition is an unauthorized sentence. He argues that the restraining orders were issued prematurely before appellant's conviction and that the appropriate procedure would have been to obtain a restraining order under Code of Civil Procedure section 527. We agree that the restraining orders must be reversed.

█ It is not the content or format of the Judicial Council form that determines the propriety of the challenged protective order, but the authorizing statute. (*People v. Hall* (1995) 8 Cal.4th 950, 960 [35 Cal.Rptr.2d 432, 883 P.2d 974] [Judicial Council cannot adopt rules inconsistent with the governing statute].) The restraining orders here were issued pursuant to section 136.2 which authorizes any court with jurisdiction over a criminal matter which has a "good cause belief that harm to, or intimidation or dissuasion of, a victim or witness has occurred or is reasonably likely to

---

*See footnote, *ante*, page 153.

[10] Effective January 1, 2003, Judicial Council form No. MC-220 as revised and replaced by Judicial Council form No. CR 160.

occur," to issue a restraining order. The statute specifies a nonexclusive list of restraining orders that are permissible, among others, an order protecting victims and witnesses from annoying, harassing or threatening contacts. (§ 136.2, subds. (d) & (g).) Section 136.2 does not provide a maximum duration for which such a restraining order can be effective nor does it provide any details regarding the procedure to be followed for obtaining such an order.[11] The restraining order is to be issued on forms adopted by the Judicial Council of California and approved by the Department of Justice but "the fact that an order issued by a court pursuant to this section was not issued on forms adopted by the Judicial Council and approved by the Department of Justice shall not, in and of itself, make the order unenforceable." (§ 136.2, subd. (g).)

■ Although section 136.2 does not indicate on its face that the restraining orders it authorizes are limited to the pendency of the criminal action in which they are issued or to probation conditions, it is properly so construed. It authorizes injunctions only by courts with jurisdiction over criminal proceedings and is aimed at protecting only "victim[s] or witness[es]," an indication of its limited nature and focus on preserving the integrity of the administration of criminal court proceedings and protecting those participating in them. This is in stark contrast to Code of Civil Procedure section 527.6 which is applicable to protect any "person who has suffered harassment," harassment defined in that section as "unlawful violence [or] credible threat of violence." The narrower scope of section 136.2 suggests that the Legislature did not intend it to authorize restraining orders beyond those germane to the proceedings before the criminal court.

■ This is further corroborated by the placement of section 136.2 in title 7, entitled "Of Crimes Against Public Justice," Chapter 6, entitled "Falsifying Evidence, and Bribing, Influencing, Intimidating or Threatening Witnesses," of the Penal Code. Section 136.1, immediately preceding section 136.2, deals with intimidation of witnesses and victims. This placement of section 136.2 reinforces our conclusion that its only purpose is to protect victims and witnesses in connection with the criminal proceeding in which the restraining order is issued in order to allow participation without fear of reprisal.

Additionally, the absence of any express time limitation on the duration of a restraining order issued under section 136.2 suggests that its duration is limited by the purposes it seeks to accomplish in the criminal proceeding. If not so limited, restraining orders under section 136.2 would usurp the similar

---

[11] Section 136.2 does authorize a restraining order issued pursuant to Family Code section 6320, which provides various procedural guidelines for its issuance. We do not opine as to the applicability of some or all of those guidelines to the other restraining orders authorized by section 136.2.

restraining orders obtainable under Code of Civil Procedure section 527.6, and undermine the numerous procedural protections for the restrainee afforded by that section.[12] The lack of such protections in section 136.2 is further evidence that its sweep is more narrow.

■ Finally, nothing in section 136.2 suggests an intention that it supplant Code of Civil Procedure section 527.6, or other injunction statutes.

■ Here, the restraining orders were issued for three years. They were not limited to the pendency of the criminal proceeding and were not a probation condition, as appellant was not given probation. The restraining orders therefore transcended the authorization of section 136.2 and must be reversed.[13]

■ Reversal is required for yet another reason. There was no evidence in the record to support the trial court's finding of good cause for their issuance. In order to issue a restraining order under section 136.2, there must exist a "good [faith] belief that harm to, or intimidation or dissuasion of, a *victim* or *witness* has occurred or is reasonably likely to occur." (Italics added.) As indicated by the italicized words, it is only wrongdoing aimed at a victim or witness that justifies the restraining order. This reflects, as we previously stated, that the restraining orders authorized by section 136.2 are those aimed at preserving the integrity of the administration of criminal court proceedings and protecting those involved in them. It therefore follows that the required good cause must show a threat, or likely threat to criminal proceedings or participation in them.

At the time of appellant's attacks on Walton and Magnosa, neither was a witness nor a victim with regard to any ongoing criminal prosecution and therefore those attacks presented no direct threat to the administration of any criminal proceedings or to their participation in them. There was no additional evidence here that either Walton or Magnosa were ever harmed, intimidated or dissuaded, or that there was a likelihood that that would occur, after they became victims or witnesses in an ongoing criminal proceeding. There was no evidence, for example, that after being charged in this matter, appellant, or anyone on his behalf and at his behest, made any efforts by

---

[12] Included among the procedural protections of Code of Civil Procedure section 527.6 are the requirements of a hearing on the petition for restraining order, the taking of testimony, proof by clear and convincing evidence, and the three-year limitation on the duration of the restraining order. (Code Civ. Proc., § 527.6, subd. (d).) Section 136.2, on the other hand, fails to specify these procedural protections.

[13] We have not been called upon to consider what procedures are applicable for the issuance of a restraining order pursuant to section 136.2, or whether those procedures comport with due process, and we therefore render no opinion on these issues.

threat or force to dissuade either Walton or Magnosa from testifying against him or proceeding with the prosecution. The fact that he had assaulted both of them before there were any criminal proceedings, and without any intent to interfere with such proceedings, is insufficient to justify the restraining orders.

## DISPOSITION

The restraining orders against appellant are reversed. The judgment is otherwise affirmed.

Doi Todd, J., and Ashmann-Gerst, J., concurred.

A petition for a rehearing was denied November 4, 2004, and on October 28, 2004, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 19, 2005.