Filed 9/2/16  P. v. Moreno-Perez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RAUL MORENO-PEREZ,<br><br>    Defendant and Appellant. | G050551<br><br>(Super. Ct. No. 12CF1024)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Dan McNerney, Judge.  Affirmed as modified.

David L. Annicchiarico, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

Raul Moreno-Perez appeals from a judgment after a jury convicted him of kidnapping to commit a sexual offense and forcible oral copulation and found true kidnapping enhancements. Moreno-Perez argues the following: (1) insufficient evidence supports his conviction for kidnapping to commit a sexual offense; (2) the trial court erred when sentencing him for kidnapping to commit a sexual offense and the sentence should be stayed; and (3) his criminal protective order must be stricken. Although we agree with Moreno-Perez's sentencing contention, a point the Attorney General concedes, his other contentions have no merit. We affirm the judgment as modified.

FACTS

Alma C. was born and raised in Mexico. In June 2001, Alma moved to Garden Grove to live with her aunt and she got a job distributing flyers. She did not speak English at the time. In November of that year, 19-year-old Alma finished working at 6:00 p.m. and waited at a bus stop in the City of Orange. There was a pharmacy behind the bus stop. At the time, the sun had set and the only light came from the pharmacy.

While Alma waited at the bus stop, a man driving a van stopped to talk to her. She ignored him, and he drove away. The man drove by again, but he did not stop or say anything. The next thing she knew, the man approached her and was standing beside her at the bus stop. The man was Hispanic and looked to be about her age. He got close to her and asked her in Spanish if she wanted a ride. She said, "No." The man said she should not think ill of him, "that he was only going to give [her] a ride." She again refused because she did not know him. He said his name was "Raul."

Moreno-Perez was insistent and "kept on telling [her] that he was going to give [her] a ride." Alma continued to decline because she did not know him. Frightened by his persistence, she looked at the young man sitting at the bus stop. The young man did not say anything.

2

After Alma continuously refused a ride from Moreno-Perez, he got closer, grabbed the inside of her elbow, and pulled her to his van parked approximately 15 feet away near the pharmacy. She complied out of fear but did not scream. He opened the passenger door, said he would hit her if she did not get in, and pushed her onto the seat with both hands. He got into the driver's seat and drove towards Garden Grove. Alma was frightened and remained silent. Moreno-Perez did not speak either.

During the drive, Moreno-Perez called someone and said he was on his way. When Alma asked where they were going, Moreno-Perez said he was going to pick up some friends. While driving, she saw he was looking for something. When he turned onto Palm Street, she said she lived nearby on Buaro Street and asked to be let out of the van. He turned onto Buaro Street and pulled into a shopping center where he parked in the alley behind the stores. It was dark, and there were no other cars nearby.

When Alma opened the passenger door to get out, Moreno-Perez was standing in front of her preventing her from leaving unless she would "be with him," which she understood to mean have sex with him. She tried to leave, but he grabbed her shoulders, slid open the back seat door, forced her in, and threatened to hit her if she did not "go along with it." She cried and begged for him to let her leave. Inside the van, he called someone and said "he was already there." After he hung up, Moreno-Perez told her it would be better if she just did it with him quickly before his friends arrived.

While in the back of the van, Moreno-Perez forced Alma to kneel on the floor in front of his exposed erect penis. When she struggled, he slapped her. Moreno-Perez said he would let her go if she performed oral sex on him. He grabbed her hair and forced her to orally copulate him for several minutes. He then pulled down her pants and underwear, brought her onto his lap, and pulled her body down on top of him. She cried and pushed him away. His penis touched her vagina about three times. She did not know if he actually penetrated her. Suddenly he said, "I can't do this," threw her onto the seat, and told her to leave quickly before his friends arrived.

3

Alma pulled up her pants and underwear and ran to the house where she lived with her aunt. She told her aunt that a man had slapped and groped her, but she did not recount the entire incident. Alma's aunt called the police. Officer Miguel Cuenca responded to the call. Alma told Cuenca what happened to her. She was taken to a hospital for a sexual assault examination. Her clothing and underwear were collected at the hospital.

In 2002, a forensic scientist performed tests on Alma's underwear. The scientist found two biological stains. The spermatozoa was analyzed for DNA, and the DNA profile was entered in a database.

Ten years later, the DNA sample from Alma's underwear was matched to a DNA sample from Moreno-Perez. When police showed Alma a six person photographic lineup, including a photo of Moreno-Perez as he looked in 2001, she was unable to identify anyone.

An information charged Moreno-Perez with kidnapping to commit a sexual offense (Pen. Code, § 209, subd. (b)(1), all further statutory references are to the Penal Code (count 1)), and forcible oral copulation (§ 288a, subd. (c)(2) (count 2)). As to count 2, the information alleged Moreno-Perez kidnapped Alma and the movement substantially increased the risk of harm (§ 667.61, subds. (a) & (d)(2)), and he kidnapped Alma in violation of section 209 (§ 667.61, subds. (b) & (e)(1)). Before trial, the trial court issued a three-year criminal protective order pursuant to section 136.2. The court ordered the criminal protective order sealed pursuant to section 293. The order was set to expire on April 11, 2015.

At trial, Alma's testimony was similar to what she told Cuenca despite some details she did not remember. On cross-examination, Alma could not remember how Moreno-Perez knew to drive directly towards her house in Garden Grove. She thought Moreno-Perez might have been watching her because "every day [she] was at that bus stop and every day [she] would go that way at the same time." Further, she

4

could not recall whether she told Cuenca that Moreno-Perez slapped her in the face when she refused to walk to the van.

Cuenca testified Alma told him that Moreno-Perez initially asked her if she was going to Garden Grove and she answered, "Yes." Moreno-Perez said he was going that way and would give her a ride, but she declined. Cuenca further testified that as Moreno-Perez pushed Alma towards the van, he slapped her when she tried to pull away. Alma also told him that Moreno-Perez had punched her in the stomach.

The jury found Moreno-Perez guilty of counts 1 and 2 and found true the allegations. On July 25, 2014, the trial court sentenced Moreno-Perez to prison for 25 years to life on count 2 pursuant to the section 667.61, subdivisions (a) and (d)(2), enhancement. The court imposed a concurrent term of seven years to life for count 1. Pursuant to section 654, the court stayed the sentence for the section 667.61, subdivisions (b) and (e)(1), enhancement.

DISCUSSION

*Sufficiency of the Evidence*

Moreno-Perez argues insufficient evidence supports his conviction for count 1 because there was no evidence he intended oral copulation from the time the kidnapping began. We disagree.

"'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence . . . . [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment

5

may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' [Citations.] 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.]" (*People v. Brown* (2014) 59 Cal.4th 86, 105-106 (*Brown*).)

A person is guilty of kidnapping if he "forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county . . . ." (§ 207, subd. (a).) The crime of kidnapping for oral copulation is a type of aggravated kidnapping set forth in section 209, subdivision (b)(1). Section 209 "requires movement of the victim that is not merely incidental to the commission of the [sexual offense] and that increases the risk of harm to the victim over and above that necessarily present in the [sexual offense] itself." (*People v. Martinez* (1999) 20 Cal.4th 225, 232.)

"[A]ggravated kidnapping by definition requires proof of specific intent." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1151, fn. 6.) The defendant must have the specific intent to commit oral copulation at the time the kidnapping begins. (See *People v. Davis* (2005) 36 Cal.4th 510, 565-566 [discussing aggravated kidnapping for robbery].) Intent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense. (*People v. Thomas* (2011) 52 Cal.4th 336, 355.)

Here, the record includes sufficient evidence from which the jury could reasonably conclude Moreno-Perez intended to sexually assault Alma at the time he kidnapped her. The entire course of conduct supports a finding Moreno-Perez kidnapped Alma with the purpose to commit sexual assault. At the beginning of the incident, Moreno-Perez drove by Alma twice and told her that he was going to give her a ride multiple times. When Alma refused, he grabbed her arm, pulled her to his van, and pushed her inside. His aggressiveness demonstrates an unlawful intent beyond merely

6

seeking a friend. Additionally, his conduct in the van demonstrates that from the outset he planned to sexually assault Alma.

In the van, Moreno-Perez called someone and said he was on his way. After Moreno-Perez parked the van, he called someone and said "he was already there." When he hung up, Moreno-Perez told Alma that she would be better off if she had sex with him before his friends arrived. Later, apparently frustrated and expressing some remorse, Moreno-Perez told Alma to leave before his friends arrived. Based on his conduct and statements, the jury could reasonably conclude Moreno-Perez planned from the outset to sexually assault Alma.

Moreno-Perez cites to a number of facts and asserts he sought only a companion and intended to drive Alma home and he did not intend to commit sexual assault until after the movement began. The jury heard this evidence and Moreno-Perez's explanation for what occurred and rejected his defense. In essence, Moreno-Perez improperly asks this court to reweigh the evidence and conclude contrary to the jury. This we cannot do. (*Brown, supra,* 59 Cal.4th at pp. 105-106.) Thus, there was sufficient evidence supporting Moreno-Perez's conviction for count 1.

*Sentence*

Moreno-Perez contends, and the Attorney General concedes, the trial court erred by imposing a concurrent sentence on count 1 because he could not be punished for the same kidnapping that was used to trigger section 667.61's "One Strike" law. We accept the Attorney General's concession.

Section 209, subdivision (d), states: "Subdivision (b) shall not be construed to supersede or affect [s]ection 667.61. A person may be charged with a violation of subdivision (b) and [s]ection 667.61. However, a person may not be punished under subdivision (b) and [s]ection 667.61 for the same act that constitutes a violation of both subdivision (b) and [s]ection 667.61." (See *People v. Byrd* (2011) 194 Cal.App.4th 88, 102.)

7

Although section 209, subdivision (d), does not express which sentence should be stayed, we conclude the shorter sentence for count 1 should be stayed. Staying the lesser sentence is consistent with section 667.61's purpose and intent as noted in *People v. Luna* (2012) 209 Cal.App.4th 460 (*Luna*). "Section 667.61 'was enacted to ensure serious and dangerous sex offenders would receive lengthy prison sentences upon their first conviction.' [Citation.] Heightened sentences are intended when 'the nature or method of the sex offense "place[d] the victim in a position of *elevated vulnerability*." [Citation].' [Citation]. 'Circumstances that elevate a victim's vulnerability and fall within the one strike statutory scheme include sex offenses where the attacker: kidnapped the victim. . . .' [Citation]." (*Luna, supra*, 209 Cal.App.4th at p. 471.) Additionally, when staying a sentence pursuant to section 654, the proper procedure is to stay the lesser term. (*People v. Beamon* (1973) 8 Cal.3d 625, 639-640.)

Based on the jury's finding Moreno-Perez kidnapped Alma with the intent to commit a sexual offense and the movement substantially increased the risk of harm to Alma, the heightened sentence is appropriate. We modify Moreno-Perez's sentence to stay the seven years to life sentence on count 1.

*Criminal Protective Order*

Moreno-Perez contends the criminal protective order pursuant to section 136.2 must be stricken or corrected to reflect an expiration date of July 25, 2014, the date the trial court sentenced him. Moreno-Perez claims that because the order provides that it expires three years after the date of issuance (April 11, 2015), he could potentially be charged with violating the order between July 25, 2014, the date of sentencing, and April 11, 2015, the date the criminal protective order expired. Not so.

The authority in section 136.2 for a protective order exists only during the pendency of a criminal case. (*People v. Ponce* (2009) 173 Cal.App.4th 378, 383 (*Ponce*)*; People v. Selga* (2008) 162 Cal.App.4th 113, 118 [same]; *People v. Stone* (2004) 123 Cal.App.4th 153, 159 [same].) This is consistent with the purpose of

8

section 136.2, "'to protect victims . . . in connection with the criminal proceeding in which the restraining order is issued in order to allow participation without fear of reprisal.' [Citation.]" (*Ponce, supra,* 173 Cal.App.4th at p. 383.) Here, the April 11, 2012, criminal protective order was no longer in effect upon sentencing on July 25, 2014. Thus, no further action is required.

## DISPOSITION

Moreno-Perez's sentence of seven years to life sentence on count 1 is stayed. The clerk of the superior court is directed to prepare an amended abstract of judgment reflecting the modified sentence and to forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation, Division of Adult Operations. As modified the judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


ARONSON, J.


FYBEL, J.

9