Filed 1/12/23  P. v. Eldridge CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. REGINALD ELDRIDGE, Defendant and Appellant. | D079641 (Super. Ct. No. FVI19003462) |

APPEAL from a judgment of the Superior Court of San Bernardino County, John P. Vander Feer, Judge.  Affirmed in part; reversed in part; remanded with directions.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting, and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Reginald Eldridge of robbery (Pen. Code,[1] § 211; count 1) and unlawfully possessing a firearm (§ 29800, subd. (a)(1); count 2). The jury also found true the allegation that Eldridge personally used a firearm during the commission of count 1 (§ 12022.53, subd. (b)). In a bifurcated proceeding, the court found that Eldridge suffered two prior offenses that qualified as strike priors (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)) and serious felony priors (§ 667, subd. (a)(1)).

The court sentenced Eldridge to prison for 10 years for the firearm enhancement plus 25 years to life for count 1. However, the court stayed Eldridge's sentence for count 2 under section 654. Also, the court struck Eldridge's two felony priors.

In addition, the court imposed a restitution fine of $300 (§ 1202.4) and stayed a $300 parole revocation fine (§ 1202.45). As to count 1, the court imposed a $30 conviction assessment (Gov. Code, § 70373) and a $40 court security assessment (§ 1465.8).

Eldridge appeals, contending the trial court erred by: (1) imposing a criminal protective order; (2) failing to realize it had discretion to impose punishment for a lesser, uncharged firearm enhancement; and (3) imposing various fines and assessments without holding an ability to pay hearing. The People correctly concede the trial court lacked the authority to impose the criminal protective order. In addition, we agree with Eldridge that it does not appear, on the record before us, that the trial court understood that it had the discretion to strike the firearm enhancement under section 12022.53, subdivision (b) and sentence Eldridge under a lesser, uncharged firearm enhancement. Accordingly, we vacate Eldridge's sentence and remand the matter back to the superior court to conduct a new sentencing hearing

---

[1] Statutory references are to the Penal Code unless otherwise specified.

consistent with this opinion. Because we are remanding the matter for resentencing, we do not address Eldridge's challenge to the fines and assessments imposed without an ability to pay hearing. At the resentencing, he may address that issue as well. In all other respects, we affirm the judgment.

## FACTUAL BACKGROUND

The underlying facts of Eldridge's crimes are not in dispute or germane to our analysis of the issues before us. Yet, to provide some context, we adopt the statement of facts as set forth in the respondent's brief.

### *Prosecution*

Eldridge was a regular customer at the Chevron Extra Mile convenience store on Palmdale Road. Typically, he would use the store to purchase Newport and Camel cigarettes. On the day in question, Eldridge began acting suspiciously as he was waiting in line. He kept looking out the window and "[j]ust like looking everywhere." When it was his turn, Eldridge asked for two cartons of Camel cigarettes. Once they were in a bag and he was rung up, Eldridge brandished a firearm and told the cashier to give him money. There was about $70 in the register. After the clerk put the money in the bag, Eldridge fled the scene with his loot.

After the robbery, Eldridge came back to the store four or five times. Like his previous visits, Eldridge purchased tobacco. Sometimes the employees would call the police when they saw Eldridge, but the police never arrived in time to apprehend him. About 15 months after the robbery, police located and arrested Eldridge in a parking lot behind the convenience store. At trial, the victim identified Eldridge as the robber with 100 percent certainty.

*Defense*

Eldridge's defense was that he had been misidentified. He called an officer to testify that the victim said the robber had a mustache. Eldridge did not have a mustache when he was detained. He also presented evidence that he had been identified as the robber at a live show up. Eldridge then called an expert witness who testified about the difficulties involved in the eyewitness identification process.

## DISCUSSION

## I

## THE CRIMINAL PROTECTIVE ORDER

### A. Eldridge's Contentions

Eldridge contends, and the People concede, that the trial court erred when it imposed a criminal protective order (CPO). We agree with the parties that the CPO is not authorized under statute. Accordingly, it must be stricken.

### B. Background

At sentencing, the prosecutor stated that the victim was requesting a CPO. Eldridge's trial counsel objected, pointing out that Eldridge was "not going to get out of prison any time soon . . . . So there is . . . no good cause to issue the CPO." Citing to section "136.2Gi,"[2] the court stated it had authority to grant "an order protecting a witness in a violent crime from all contact at that time by the defendant. . . ." The court then announced, "I am going to grant the criminal protective order." The court explained that terms

---

[2] In the transcript, the court referred to section 136.2Gi. However, there is no subdivision (G)(i). Thus, it appears the court was referring to section 136.2, subdivision (a)(1)(G)(i). The copy of the court's order in the record simply states that it was imposed under "Penal Code, § 136.2."

of the order, and that "for the next three years, [Eldridge was] . . . to have no contact with [the victim]."

### C.  Analysis

Section 136.2, subdivision (a)(1), authorizes a trial court to issue orders protecting victims or witnesses in a criminal matter.  (*People v. Ponce* (2009) 173 Cal.App.4th 378, 382.)  Courts have construed section 136.2, subdivision (a) to authorize imposition of protective orders that remained in effect only during the pendency of the criminal action.  (*People v. Corrales* (2020) 46 Cal.App.5th 283, 286; *People v. Stone* (2004) 123 Cal.App.4th 153, 159-160; *People v. Selga* (2008) 162 Cal.App.4th 113, 118-119.)  In response to this restrictive judicial construction, the Legislature created an exception to the preconviction limitation of a section 136.2 restraining order by adding subdivision (i).  (Stats. 2011, ch. 155, § 1; *People v. Beckemeyer* (2015) 238 Cal.App.4th 461, 465.)  That subdivision permits a court to issue a postconviction protective order of up to 10 years when a defendant is convicted of a crime involving domestic violence, certain enumerated sexual offenses, street terrorism, or crimes that require sex offender registration under section 290.  (§ 136.2, subd (i)(1).)  Except as set forth in subdivision (i)(1), "section 136.2 generally does not authorize a trial court to impose a postjudgment restraining order against a criminal defendant." (*Corrales*, at p. 286; *Beckemeyer*, at p. 465.)

Here, the court imposed a postjudgment restraining order against Eldridge.  The order appears to have been imposed under section 136.2, subdivision (a)(1)(G)(i).  Because that provision only permits courts to issue CPOs during the pendency of a criminal action, and not postjudgment, the order was not proper under section 136.2, subdivision (a)(1)(G)(i).

5

In addition, the CPO was not a proper postjudgment restraining order under section 136.2, subdivision (i). In *People v. Garcia* (2022) 76 Cal.App.5th 887, the defendant "was found guilty of second degree robbery and assault with a deadly weapon." (*Id*. at p. 890.) "The court imposed an eight-year prison term, suspended execution of sentence and placed defendant on five years' formal probation." (*Ibid*.) "The court also imposed a 10-year protective order pursuant to Penal Code section 136.2, subdivision (i)(1)." (*Ibid*.) On appeal, the defendant argued that "the court exceeded its authority in imposing the postconviction protective order." (*Ibid*.) The People agreed. (*Id*. at p. 901.) As the court explained, "Section 136.2, subdivision (i) provides authority for the imposition of postconviction protective orders where a defendant is convicted of a qualifying *domestic violence* offense." (*Ibid*.) Because the defendant's convictions for robbery and assault were not domestic violence offenses "[t]he court did not have statutory authority to impose the postconviction protective order. . . ." (*Ibid*.) Therefore, the court concluded that the protective order must be stricken. (*Ibid*.)

Like *Garcia*, Eldridge's robbery and unlawful firearm possession convictions did not involve domestic violence, a gang, or a sex crime. As such, this was not a proper postconviction CPO under section 136.2, subdivision (i). Because the order was not properly imposed during the pendency of the criminal action or properly imposed as a postconviction order, the court exceeded its authority by imposing the order under section 136.2. Consequently, the subject CPO must be stricken.

6

II

THE FIREARM ENHANCEMENT

A.  Eldridge's Contentions

Eldridge argues that the trial court erred by failing to consider imposing an uncharged lesser included firearm enhancement under section 12022.5, subdivision (a) rather than imposing the charged firearm enhancement under section 12022.53, subdivision (b).

B.  Background

The jury found true the allegation that Eldridge personally used a firearm during the commission of a robbery.  Before sentencing, Eldridge moved to strike the firearm enhancement under section 1385, subdivision (a). At the sentencing hearing, the court denied the motion.  In doing so, it recognized its discretion to strike the enhancement but observed that the Legislature had provided increased punishment for criminals who use guns because firearms can cause "great damage."  The court further noted that if Eldridge's gun had been fired, "people could have died."

C.  Analysis

Section 12022.5, subdivision (a) provides that "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense."

Section 12022.53 established a three-tiered system for firearm enhancements that applies to defendants who use firearms during the commission of certain felonies.  (§ 12022.53.)  First, a defendant who "personally uses a firearm" during the commission of a felony is subject to an additional and consecutive enhancement of 10 years to life.  (§ 12022.53,

7

subd. (b).)  Next, a defendant who "personally and intentionally discharges a firearm" during the commission of a felony is subject to an additional and consecutive enhancement of 20 years to life.  (§ 12022.53, subd. (c).)  Finally, a defendant who "personally and intentionally discharges a firearm and proximately causes great bodily injury[ ] . . . or death" during the commission of a felony is subject to an additional and consecutive enhancement of 25 years to life.  (§ 12022.53, subd. (d).)  Section 12022.53 further provides that a sentencing court may strike or dismiss an enhancement required by subdivisions (b), (c), and (d) "in the interest of justice."  (§ 12022.53, subd. (h).)

Before the California Supreme Court's recent decision in *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*), the question of whether a trial court possessed the discretion to modify a section 12022.53 firearm enhancement by imposing a lesser enhancement divided California Courts of Appeal. (Compare *People v. Morrison* (2019) 34 Cal.App.5th 217, 223 (*Morrison*) with *People v. Tirado* (2019) 38 Cal.App.5th 637, 643, review granted November 13, 2019, S257658.)  For example, in *Morrison*, the court held that a trial court can strike a section 12022.53, subdivision (d) enhancement and impose a lesser section 12022.53, subdivision (b) or (c) enhancement instead. (*Morrison*, at p. 223.)  However, other courts held that section 12022.53 did not authorize a court to "substitute one enhancement for another."  (*People v. Tirado*, at p. 643.)

The California Supreme Court recently resolved this split in *Tirado* by holding, "When an accusatory pleading alleges and the jury finds true the facts supporting a section 12022.53[, subdivision] (d) enhancement, and the court determines that the section 12022.53[, subdivision] (d) enhancement should be struck or dismissed under section 12022.53[, subdivision] (h), the

8

court may, under section 12022.53[, subdivision] (j), impose an enhancement under section 12022.53[, subdivisions] (b) or (c)." (*Tirado*, *supra*, 12 Cal.5th at p. 700.) Furthermore, even if the prosecution "did not specifically allege enhancements under section 12022.53[, subdivisions] (b) or (c), the trial court could impose those enhancements even when the section 12022.53[, subdivision] (d) enhancement was not legally or factually inapplicable." (*Id.* at p. 697.) In explaining its reasoning, the court reviewed the legislative intent underlying the amendments to section 12022.53 and concluded "the statutory framework permits a court to strike the section 12022.53, [subdivision] (d) enhancement found true the jury to impose a lesser uncharged statutory enhancement instead." (*Tirado*, at p. 692.)

Here, arguably, Eldridge's claim of error requires an extension of the holding in *Tirado*. There, our high court considered a narrower issue. It did not consider whether trial courts have discretion to strike a section 12022.53, subdivision (b) enhancement and substitute an uncharged, section 12022.5, subdivision (a) enhancement. However, in the instant action, Eldridge asserts "there is no basis—in logic or in precedent—for limiting the court to enhancements contained within the same statutory provision as the charged enhancement." The People counter that subdivision (j) of section 12022.53[3] provides that the only lesser enhancement that may be imposed when an enhancement under section 12022.53 has been found true would be another enhancement under that section.

---

[3] Section 12022.53, subdivision (j) states that when an enhancement under section 12022.53 "has been admitted or found to be true, the court shall impose punishment for that enhancement pursuant to this section rather than imposing punishment authorized under any other law, unless another enhancement provides for a greater penalty or a longer term of imprisonment."

After briefing was complete in the instant action, at least two published opinions addressed the precise issue before us, concluding Eldridge's argument is more persuasive. (See *People v. Johnson* (2022) 83 Cal.App.5th 1074, 1085-1086 (*Johnson*), review granted Dec. 14, 2022, S277196 [concluding that under *Tirado* the trial court may impose an uncharged lesser included enhancement per section 12022.5 after striking a greater enhancement under section 12022.53]; *People v. Fuller* (2022) 83 Cal.App.5th 394, 397 (*Fuller*), review granted Nov. 22, 2022, S276762 [same].) However, a recent published case came to the opposite conclusion. (See *People v. Lewis* (2022) 86 Cal.App.5th 34 [concluding § 12022.53, subdivision (j) prevented the trial court from substituting the defendant's § 12022.53 firearm enhancement for a more lenient firearm enhancement under § 12022.5, subdivision (a)].) In addition, we are aware of an unpublished decision that reached the same supposition as *Lewis*. Our high court granted the appellant's petition for review in the unpublished opinion and denied the People's request to publish.[4]

Although our high court will resolve this split and provide the trial courts with the appropriate guidance, until then, we must weigh in on this issue to resolve Eldridge's challenge here. In doing so, however, we shall refrain from saying more than what has already been said. Our colleagues on both sides of the dispute have done an excellent job of analyzing the salient issues. That said, we agree with the analysis and conclusion set forth in *Johnson, supra*, 83 Cal.App.5th at pages 1088 through 1093, review granted. (See also *Fuller, supra*, 83 Cal.App.5th at pp. 400-403, review granted.) As such, it appears that remand is necessary to allow the court to exercise its

---

[4] See *People v. McDavid* (July 14, 2022, D078919) [Cal.App. Unpub. LEXIS 4364], review granted Sept. 28, 2022, S275940.

informed discretion to determine whether to strike the enhancement under section 12022.53, subdivision (b) and impose a lesser enhancement under section 12022.5, subdivision (a).[5]

Nonetheless, the People argue that it is clear, on the record before us, that the court would have declined to impose a lesser included enhancement. To this end, they point out that, at the sentencing hearing, the court emphasized that "[a] firearm is something that causes great damage" and noted that had Eldridge's gun had been fired, "people could have died" and "been seriously injured." The court also observed that a gun "generates" "fear," and the victim remained traumatized by the experience. The People assert the court's comments show that it would not have opted to impose a lesser enhancement during sentencing.

However, the court's comments only explained why it was not willing to strike the enhancement under section 12022.53, subdivision (b). At that time, no one was arguing that the court could impose a lesser enhancement

_____

[5]     We summarily reject the People's argument that Eldridge forfeited this issue on appeal by failing to raise it in the trial court. At the time of Eldridge's May 21, 2021 sentencing hearing, the California Supreme Court had not yet issued its opinion in *Tirado*, *supra*, 12 Cal.5th 688, and there is nothing in the record indicating that the trial court anticipated the Supreme Court's holding or otherwise believed it had the discretion to strike the firearm enhancement under section 12022.53, subdivision (b) and instead impose a lesser, uncharged enhancement under 12022.5, subdivision (a). Further, we are not persuaded by the People's argument that Eldridge was on notice to make such an argument because *Morrison*, *supra*, 34 Cal.App.5th 217 was decided two years before Eldridge was sentenced. There was a split among the appellate courts regarding whether a court could impose a lesser included enhancement. That split was resolved in *Tirado*, eight months after Eldridge was sentenced. (See *GreenLake Capital, LLC v. Bingo Investments, LLC* (2010) 185 Cal.App.4th 731, 739, fn. 6 [a reviewing court is "more inclined to find an exception to the general rule of forfeiture when there has been a change in decisional law that affects the rights of the parties"].)

11

under section 12022.5, subdivision (a).  Accordingly, the court's comments highlight the court's position on the decision to strike or impose the enhancement altogether, but they are not conclusive of whether remand would be futile if the court knew it had the discretion to impose a lesser enhancement.

In short, here, the court's statements alone are not sufficient to "clearly indicate" that the trial court would have imposed the section 12022.53, subdivision (b) enhancement if it knew it had the discretion to impose a lesser enhancement under section 12022.5, subdivision (a).  (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).)  The statements highlighted by the People merely illustrate the court's reasoning as to whether it should entirely impose or strike the section 12022.53, subdivision (b) enhancement.

Simply put, there is nothing in the record to show that, given the choice to impose the lesser firearm enhancements under section 12022.5, subdivision (a) rather than the enhancement under subdivision (b) of section 12022.53, the trial court would have imposed the same sentence as when it believed it only had the binary choice to dismiss or impose the section 12022.53, subdivision (b) enhancement.  Further, even when the record reflects that the resentencing court "understood that they had some discretion in sentencing," the record still needs to clearly indicate that the court "would have imposed the same sentence had they been aware of the full scope of their discretion."  (*Gutierrez, supra,* 58 Cal.4th at p. 1391.)  Thus, we conclude that remand for resentencing is appropriate in this case.

## VI

## THE ABSENCE OF AN ABILITY TO PAY HEARING

At sentencing, the court imposed a restitution fine of $300 (§ 1202.4) and stayed a $300 parole revocation fine (§ 1202.45). As to count 1, the court imposed a $30 conviction assessment (Gov. Code, § 70373) and a $40 court security assessment (§ 1465.8).

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, Eldridge contends that imposition of these various fines, fees, and assessments, without a determination of his ability to pay, violated his constitutional right to due process. He also argues the accessed fees and fines violate the Eighth Amendment to the United States Constitution. As such, Eldridge asserts his case should be remanded to allow the trial court to determine whether he has the ability to pay the subject fines and assessments. We conclude this claim is moot because we already have determined this matter must be remanded for Eldridge to be resentenced. If Eldridge so chooses, he may address the imposition of any fees or fines during his resentencing hearing.

DISPOSITION

Eldridge's sentence is vacated.  This matter is remanded to the superior court with directions to:  (1) strike the criminal protective order and (2) resentence Eldridge consistent with this opinion.  In all other respects, the judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


DO, J.

14