Filed 2/7/24  P. v. Sanchez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080633 |
| v. | (Super.Ct.No. FSB21002616) |
| TONY CARLOS SANCHEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Kory E. Mathewson, Judge.  Affirmed.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Elana Miller, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Tony Carlos Sanchez guilty of disobeying a court order (Pen. Code, § 166, subd. (a)(4), count 3).[1]  The court sentenced defendant to 180 days in jail with credit for time served of 301 days.  The court also issued a criminal protective order (CPO) protecting the victim, defendant's mother, from contact with defendant.

On appeal, defendant contends the court was not authorized to issue a CPO under section 136.2 because defendant's conviction did not involve domestic violence.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On July 9, 2021, the People filed a felony complaint in case No. FSB21002616 charging defendant with criminal threats (§ 422, count 1) and alleged he committed the offense with the use of a deadly weapon (§12022, subd. (b)(1)).  On August 5, 2021, the court issued a CPO under section 136.2, subdivision (i)(1), protecting the victim.  On August 17, 2021, the People charged defendant by felony information in case No. FSB21002616 as charged in the complaint.

On December 15, 2022, the People filed a motion to consolidate trial in case Nos. FSB21002616 and FSB22002497; the latter case added an additional count of criminal threats and a count of disobeying a court order.  (§ 166, subd. (a)(4).)  On January 3, 2023, the court granted the motion to consolidate the cases.

---

[1]  All further statutory references are to the Penal Code unless otherwise noted.

2

On January 4, 2023, the People filed a first amended information charging defendant with two counts of criminal threats (§ 422, counts 1 & 2) and one count of disobeying a court order (§ 166, subd. (a)(4), count 3). The People also alleged that in defendant's commission of the count 1 offense, he personally used a deadly weapon. (§ 12022, subd. (b)(1).)

At trial, the victim testified that in 2021 she lived with defendant and his three children. Defendant became more aggressive over time, fighting both verbally and physically with the victim and his children. "He would always say that he was going to kill me."

One day, he told her he would kill her with a sharpened switchblade that he wore on a chain around his neck. He made the threats while sharpening the knife.

The victim "was very much afraid." He made her fear for her personal safety. She believed that he was capable of killing her.

She called the police. After the incident she requested a CPO against defendant because she did not want him to return to her home.

In 2022, another incident with defendant occurred: "I was at my house sitting on my sofa just resting, and I did not lock the front door, and then all of a sudden I got startled because I saw somebody came in, which I did not recognize who it was because he looked completely different." Defendant was angry at her; for two hours she told him to leave.

3

Defendant went to the kitchen and grabbed a knife. "He didn't say anything." "He just kept showing me the knife." "[H]e would grab the knife . . . trying to intimidate me." "I felt worried and I felt frightened." She called the police and told them she had a restraining order against defendant.

An officer testified he was dispatched to the victim's residence on July 7, 2021. "She seemed very distraught; in my opinion, afraid; and she was crying at the time." She said she feared defendant.

Another officer testified he was dispatched to the victim's residence on August 15, 2022, in reference to a violation of a court order. The victim "seemed very distraught. She was scared and appeared to be frightened." "She was shaky—she was shaking. Her eyes were a little watery. It appeared she had been crying. She just kind of seemed really nervous."

The officer located a knife. He contacted defendant, who was the restrained party in a CPO issued to protect the victim. The officer arrested defendant.

The court granted defendant's motion under section 1118.1 to dismiss count 2.[2] The jury acquitted defendant of the count 1 offense. It found him guilty on count 3.

At sentencing, the People noted that the victim wanted defendant to stay away from her home: "She would like the Court to issue another restraining order if that is possible, to get a new CPO."

---

[2] The court denied the motion as to counts 1 and 3.

The court observed, "the Court's tentative is to sentence the defendant to credit for time served which is 301 days per district attorney's numbers. The max is 180. So defendant is in excess of the maximum sentence. Consequently, the Court cannot put [defendant] on probation. It would be terminal. So I cannot put any terms; however, I can issue a CPO and that . . . is the Court's intention to do that."

Defense counsel objected "to any CPO being issued, given that he's not going to be on probation. I think the proper avenue for any restraining order at this point by [the victim] would be go to the family court and make those appropriate affidavits and findings be made by a judge in order to issue any kind of restraining order at this point." "Not only that, we request a termination of the CPO that was previously issued, as that CPO was issued related to Count 1. Count 1 he's been fully acquitted of so that CPO should be terminated and we don't think the Court should or has the authority to issue any new CPO, given that he's going to be sentenced to the maximum as a terminal disposition."

The court replied that it agreed with defense counsel as to the first CPO: "That will be terminated; however, the CPO that the Court made reference to in its tentative can issue in light of the conviction for disobeying a court order and despite the fact that the disposition will be terminal." The court asked the People whether it could issue a

domestic violence CPO now since the underlying CPO was not domestic violence related.[3]

The People responded, "I believe the fact that testimony came out during the trial that they were cohabitating would bring this under the [domestic violence] statute, as that is one of—in looking at [domestic violence], one of those is that they were cohabitating. Based on the facts of the case, it appears that, at least, you know, in 2021, they were cohabitating. So my argument would be that it would be applicable as a [domestic violence] CPO based on that."

The court sentenced defendant to 180 days with credit for 301 days: "This is a terminal disposition, [defendant]. Meaning that you are not on probation given the amount of time that you've served." "However, the Court is going to issue a criminal protective order. This order is new and supersedes the previous order that was pending while you were trying your case."

## II. DISCUSSION

Defendant contends the court was not authorized to issue a CPO under section 136.2 as part of defendant's terminal sentence because neither defendant's conviction for violating a court order nor the underlying restraining order involved domestic violence.

---

[3] To the extent the order that the jury convicted defendant of violating was the underlying CPO, the court's statement that it was not domestic violence related is partly contradicted by the fact that the court issued it pursuant to section 136.2, subdivision (i)(1), as that is the box checked on the order. Of course, the court technically could not have issued a CPO pursuant to section 136.2, subdivision (i)(1), at that point in time because defendant had yet to be convicted of any crime, let alone one involving domestic violence.

6

The People respond that the court properly issued the CPO because this was a domestic violence case; however, the People maintain the court should have issued the CPO pursuant to section 136.2, subdivision (i)(l). We agree with the People.

"Section 136.2 permits the trial court in a criminal case to protect a witness or a victim by issuing a protective order. [Citation.] 'Under section 136.2 . . . , during the pendency of a criminal proceeding when the court has a "good cause belief that harm to, or intimidation or dissuasion of, a victim or witness has occurred or is reasonably likely to occur," the court is authorized to issue a restraining order.' [Citation.] But orders issued under this section are of a limited duration. The trial court has jurisdiction to issue one only during "'the pendency of [a] criminal action'" before it. [Citation.]" (*People v. Ponce* (2009) 173 Cal.App.4th 378, 382, fn. omitted.)

"[I]n 2011, the Legislature responded to this restrictive judicial construction by creating an exception to the preconviction limitation of a section 136.2 restraining order for domestic violence cases. (Stats. 2011, ch. 155, § 1.) Effective January 1, 2012, the Legislature added section 136.2, subdivision (i) to the statutory scheme so that a 10-year postconviction protective order would be permissible when a defendant was convicted of a domestic violence offense." (*People v. Beckemeyer* (2015) 238 Cal.App.4th 461, 465, fn. omitted.)

"When a criminal defendant has been convicted of a crime involving domestic violence, as defined in Section 13700 or in Section 6211 of the Family Code . . . the court, at the time of sentencing, shall consider issuing an order restraining the defendant

7

from any contact with a victim of the crime.  The order may be valid for up to 10 years, as determined by the court.  This protective order may be issued by the court regardless of whether the defendant is sentenced to the state prison or a county jail, whether the defendant is subject to mandatory supervision, or whether imposition of sentence is suspended and the defendant is placed on probation. . . .  It is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of a victim and the victim's immediate family."  (§ 136.2, subd. (i)(l))

Domestic violence is abuse perpetrated against any person related by consanguinity or affinity within the second degree.  (Fam. Code, § 6211, subd. (f).)  "[P]arent and child are related in the first degree of lineal kinship or consanguinity, . . ."  (Prob. Code, § 13, subd. (b).)  Abuse includes engaging "in any behavior that has been or could be enjoined . . . ."  (Fam. Code, § 6203, subd. (a)(4))  "Abuse is not limited to the actual infliction of physical injury or assault."  (Fam. Code, § 6203, subd. (b); see *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 603 [Reversing court that denied restraining order based on incorrect conclusion that violations of a temporary restraining order were not acts of abuse.]; see *People v. Sorden* (2021) 65 Cal.App.5th 582, 607-608 [Defendant's acts of surveilling the victim and disturbing the peace could form the basis of a conviction for a violation of section 166, holding defendant in contempt for violating a criminal protective order for crimes of domestic violence.].)

8

"'"We imply all findings necessary to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings."'" [Citation.]" (*People v. Therman* (2015) 236 Cal.App.4th 1276, 1279 [Defendant's conviction for false imprisonment supported an implied finding by the trial court that defendant committed domestic abuse against the victim such that a protective order was authorized.].) "We presume, in the absence of evidence to the contrary, that the trial court knew and applied the correct statutory and case law. [Citation.]" (*Ibid.*)

Here, the court properly issued the CPO. Defendant and his mother were related in the first degree of consanguinity. (Fam. Code, § 6211, subd. (f); Prob. Code, § 13, subd. (b).) The jury found him guilty of violating the CPO, which purported to protect the victim, defendant's mother, with whom he lived at the time the first CPO issued. (Fam. Code, § 6203, subd. (b); *N.T. v. H.T.*, *supra*, 34 Cal.App.5th at p. 603; *People v. Sorden*, *supra*, 65 Cal.App.5th at pp. 607-608.)

The People specifically argued in favor of the court's issuance of a CPO because the victim had requested one. She did not want defendant returning to her home. The People noted that the testimony at trial reflected defendant and the victim were cohabitating when the court issued the underlying CPO. The court observed that defendant and the victim were "familial in nature[.]" Thus, sufficient evidence supported the court's determination that defendant's act of violating the CPO qualified as an act of domestic violence, warranting issuance of a CPO pursuant to section 136.2, subdivision (i)(1).

9

Defendant argues that because the underlying CPO was not domestic violence related, the court could not issue a new domestic violence CPO for violating the underlying order.**4** We disagree. As discussed, *ante*, substantial evidence supports the court's determination that defendant's violation of the underlying CPO was an act of domestic violence.

Defendant also argues that because the court only checked the box reflecting that the CPO was issued pursuant to section 136.2, but not the box reflecting that it was more specially issued pursuant to section 136.2, subdivision (i)(1), the order should be stricken. We disagree.

First, the fact that the court did not also check the more specific box on the CPO indicating it was issued pursuant to section 136, subdivision (i)(1), does not invalidate the order. (*People v. Stone* (2004) 123 Cal.App.4th 153, 158 ["It is not the content or format of the Judicial Council form that determines the propriety of the challenged protective order, but the authorizing statute."].) Second, the form itself reads "Criminal Protective Order – *Domestic Violence*." (Italics added.) Third, the court expressly stated that it was issuing a domestic violence CPO. (See *People v. Jones* (2012) 54 Cal.4th 1, 89 [The order "'does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize.'"].) Thus, the CPO was obviously issued pursuant to subdivision (i)(1) of section 136.2 because that is the only authority under which the court could have issued the order. (*People v. Therman* (2015)

---

**4** See footnote three *ante*.

236 Cal.App.4th 1276, 1279 ["We presume, in the absence of evidence to the contrary, that the trial court knew and applied the correct statutory and case law. [Citation.]"].)

Although the better practice would be to have checked both boxes reflecting that the CPO was issued under, generally, section 136.2, and, more specifically, subdivision (i)(l), the failure to check the latter box does not invalidate the order. Sufficient evidence supported the court's issuance of the CPO.

## III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.